PUFFER MANUFACTURING COMPANY *vs.* MAGNERE YEAGER
& another.

Bristol.  May 13, 1918. — June 25, 1918.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & PIERCE, JJ.

*Custom.  Evidence,* Of custom, Presumptions and burden of proof.  *Contract,*
Construction, Incorporation of custom.  *Practice, Civil,* Exceptions, Findings
by judge.

At the trial of an action for breach of a contract, made by correspondence, whereby
the plaintiff agreed to sell and deliver and the defendant agreed to purchase and
pay for certain marble to be used for the interior finish of a post office building,
the defendant admitted the making of the contract but contended that it was
conditional upon the approval, by a supervising architect employed by the
national government, of samples submitted by the plaintiff, by reason of a
general custom that such contracts relating to the construction of government
buildings always were subject to such a condition.  It did not appear that the
plaintiff had knowledge of any such custom.  The defendant offered in evidence
his own testimony that such a provision was written into every government
contract that he had taken.  The evidence was excluded.  *Held,* that the ex-
clusion was proper, there being no offer to show that the plaintiff had knowledge
of the custom and the evidence not tending to show a custom of such general
and universal application that the plaintiff must be presumed to have had knowl-
edge of it.

There was conflicting evidence, at the trial of the action above described, as to
whether a written statement of the condition that samples should be approved by
the supervising architect was included in a set of plans sent to the plaintiff by the
defendant.  The judge found for the plaintiff.  *Held,* that this finding must mean
that the judge found that no such written statement was furnished to the plain-
tiff and that the plaintiff had no notice of such a custom; and that, upon such
findings, a further finding for the plaintiff was warranted.

No exception lies to the refusal of a judge sitting without a jury to make specific
findings of fact.

CONTRACT for breach of an alleged agreement, made by corre-
spondence, whereby the plaintiff was to sell and deliver and the
defendants were to purchase "American Sienna marble" for use
in the interior finish of the post office building at New Bedford.
Writ dated July 15, 1915.

In the Superior Court the action was heard by *White,* J., with-
out a jury.  The material evidence and the course of the trial are
described in the opinion.  The judge found for the plaintiff in the

sum of $2,171.33.   The defendants alleged exceptions and also claimed an appeal.

The case was submitted on briefs.

*O. S. Cook, M. R. Brownell & F. H. Taber,* for the defendants.

*I. R. Clark, N. B. Vanderhoof & A. E. Little,* for the plaintiff.

PIERCE, J.   This is an action of contract to recover damages for the alleged breach of a contract to receive and pay an agreed sum for a certain quantity of finished American Sienna marble.

The defendants, before December 17, 1913, had entered into a "general contract" with the United States for the erection of a post office building at New Bedford, Massachusetts, and were to use Eastman's American Sienna marble for the interior.

On December 17, 1913, the plaintiff wrote to the defendants soliciting the privilege of submitting an estimate for supplying the marble.   On December 19, 1913, the defendants replied, "we will be pleased to receive your proposal on the different marbles, as follows: . . . A separate proposal on all marble specified to be of American Sienna."   On December 20, 1913, under separate covers, the defendants wrote to the plaintiff and forwarded certain specifications and drawings.   The letter requested a return of the drawings and a part of the specifications.   On December 26 and 27, 1913, the specifications and drawings were returned as requested.

On January 3, 1914, the plaintiff sent to the defendants "estimates for interior marble in the New Bedford Post Office."   These estimates included a separate proposal for American Sienna marble (where specified) $6,473.   On January 5, 1914, the defendants, after stating, "we will not be able to consider your proposition as a whole," continued, "Your price on the American Sienna marble is about in line.   Please advise us if you would be interested in making a quotation on this part of the work only, and if you can consider an offer of $6,000.00 for this material, cut ready to set, delivered on the cars at New Bedford.   If you are, it may be that we can give you this part of the work.   Trusting to hear from you promptly, we are . . ."

To this letter, on January 7, 1914, the plaintiff telegraphed the defendants requesting that they "name highest price you will pay for all marble" to be used in the building.   On January 8, 1914, in reply, the defendants wrote: " . . . As we advised you in our letter . . . we do not see how you can accept any offer we could

make you, but on the American Sienna it is different.  We have three proposals, all very close to each other.  For that reason we made you the offer of $6,000.00 . . . We will say, however, if you are interested in the offer, made you for the American Sienna, we would like to have you advise us promptly . . . ."

On January 10, 1914, the plaintiff replied: "We received your reply to our night letter, and beg to thank you for the same.  We will accept your proposition to use Eastman's American Sienna marble, in the New Bedford Post Office, so if you will kindly send along the contract in duplicate, we will sign same and return one copy to you . . . ."  On January 17, 1914, the defendants wrote to the plaintiff, "This will acknowledge receipt of yours of the 10th inst. advising that you will accept our offer to furnish that part of the marble for the building mentioned above [New Bedford, Mass., P. O.] specified to be of American Sienna, and your request to forward contract. . . .  Just as soon as this has been done, and some other matters that require my immediate attention have been attended to, the question of contract will then be taken up. In the meanwhile, please send us by express a sample (about 6″ × 12″) of the Eastman's American Sienna marble on which your proposal is based."  The plaintiff complied with the defendants' request for samples, and on January 27, 1914, was notified by the defendant that "in our opinion it will not be satisfactory to the Supervising Architect."  On January 29, 1914, the plaintiff wrote to the defendants, "We have notified our plant to send you . . . samples that are more strongly marked than the first one submitted.  Hoping one of these samples will prove satisfactory, we are . . ."

On February 9, 1914, the defendants wrote to the plaintiff: "Referring to that part of the marble work for this building for which we have given you the order, we find it will be necessary that you give us certain information before the contract can be prepared.  Please advise us as follows: Are you a co-partnership or a corporation? If a co-partnership, give us the names of the different members and their place of residence.  If a corporation, under the laws of what State are you incorporated?  Just as soon as we have this information, contracts in duplicate will be forwarded you for your signature."  On February 11, 1914, the plaintiff replied: " . . . we are a corporation, incorporated under the laws of the State of Maine.

We note you will forward to us the contract in duplicate, for our part of the work, as soon as you receive this information . . . ."

On February 17, 1914, the defendants wrote to the plaintiff: "Referring to the American Sienna marble required in the construction of the U. S. Post Office, New Bedford, for which you have the contract. . . . Personally, we like it [the sample] very much and are of the opinion it will meet with the approval of the Supervising Architect. In order to expedite matters, we would suggest that you furnish us with two more samples 12″ square, ⅛″ thick. . . ." On February 27, 1914, the defendant wrote, "I am pleased to advise you that the sample of the material met with general approval, but they took exception to the polish." The letter requested two more samples, "that will show the extreme markings and colors of the marble when furnished, and see that they are more polished. As soon as this is done, express them to us here so that we can forward them to the Supervising Architect." On March 4, 1914, the plaintiff sent "samples of American Sienna, showing extremes that are obtainable in the same block, as near as we are able to get it." Letters and telegrams relating to delay in sending additional samples followed. On March 11, 1914, the defendants, referring to the samples sent, wrote: "they have been received and forwarded to the Supervising Architect. Just as soon as we are advised as to his decision, we will in turn advise you."

On March 20, 1914, the plaintiff wrote, "We presume the contracts have slipped your mind, as they have not yet come to hand." On April 15, 1914, the defendants wrote (quoting from a communication from the supervising architect), "No action is taken on American Sienna . . . as it is desired to change the kinds of marbles and finishes as follows; for which a proposal is requested. All standing marble except base to be American Sienna with a hone finish. There appears to be some question as to the possibility of obtaining American Sienna in the sizes and quantity required without an objectionable variation in color. The sample forwarded shows a much greater variation than desired and in case you find that you cannot furnish this marble in a more uniform shade, please so advise this office." The writer goes on: "The above quotation speaks for itself. We have thought for some time that the Supervising Architect was contemplating changing the marble. . . . We would suggest that you make a thorough

investigation and after so doing, if you find that you can supply the kind of marble that the Government wants, forward us the proposal for the changes, also, the samples requested." The plaintiff sent "another sample of American Sienna" and stated that the price "would be the same whether polished or honed."

On January 2, 1915, in reply to inquiry of the plaintiff in a letter of December 30, 1914, the defendants stated that the samples were not satisfactory "on account of the extreme variations in the markings," and "it was decided to use another kind of marble." On January 5, 1915, the plaintiff wrote, "We are willing to give you any kind of material that the quarry will produce stone to meet."

On January 23, 1915, the defendants wrote, "We will not deny that we gave you the order, but you must bear in mind that samples of all marble that is used in the different Post Office Buildings must be submitted to the Supervising Architect for his approval. You sent us a sample which we forwarded to the Supervising Architect and it was not satisfactory. You were so notified and sent us another sample. This we also forwarded and it was not satisfactory and after that it was decided to change from American Sienna to Meadow Pink Tennessee."

In addition to the fifty-three letters and telegrams submitted in evidence (from which the foregoing excerpts have been somewhat concisely abstracted), the defendants' only witness, Yeager, affirmed, and the witnesses for the plaintiff denied, that there was annexed to the specifications furnished the plaintiff, which accompanied plans showing "the parts of the building where the different kinds of marble were to be used and the quantities of each kind, but made no reference to the submitting of samples," a sheet that, under the heading "samples," had a provision which read: "The following samples must be submitted, charges prepaid, to the Supervising Architect or to the superintendent, as indicated, for approval. Each list shall be forwarded within the specified time from the date of the award of contract, and in not more than two shipments, to the Supervising Architect. Marble. Two pieces of each kind, $7/8 \times 12 \times 12$ inches, showing finishes and extreme variations in color and markings." The defendants further offered to show by this witness, "that in the construction of government buildings there is a universal, or practically a universal understanding, sufficient to amount to a general custom in the

business, that samples shall be submitted subject to approval and rejection by the Supervising Architect."

Other than might be inferred should the judge find the provision above quoted relating to "samples" was annexed to the specifications which accompanied the plans furnished the plaintiff by the defendants, no evidence was offered to show that the plaintiff had knowledge of the terms of the defendants' contract or of any usage in building contracts with the Federal government to provide that samples must be submitted to and approved by the "Supervising Architect" before any material could be used in government buildings.

In proof of the alleged general or universal custom, the defendants' witness, in reply to questions from the judge, stated that the provision "that samples shall be submitted subject to approval and rejection by the Supervising Architect," was written into every contract that he had taken. The presiding judge excluded the testimony on the ground that there was no offer by the defendants to show the plaintiff had knowledge of such custom, and on the ground that it was not a matter of custom but of contract, "written into every contract he has taken." To this ruling the defendants excepted. The evidence offered did not require a finding that the alleged custom or usage was a general or universal custom, or that it was more than a particular usage or requirement that there be inserted in all contracts for the construction of government buildings a provision that samples must be submitted and approved before any material could be used. This was not a custom of such general and universal application that the plaintiff must be presumed to have had knowledge of it; and there was no evidence of actual knowledge. Under these conditions we are of opinion the ruling was right. *Stevens* v. *Reeves,* 9 Pick. 198. *Barrie* v. *Quinby,* 206 Mass. 259. *Coyne* v. *Byrne,* 218 Mass. 99.

It was the contention of the defendants that the contract, which they do not deny making, was conditional upon approval of the samples by the "Supervising Architect."

At the close of the evidence the defendants moved "that the court find and rule that upon all the evidence the plaintiff is not entitled to recover and that the defendants should have judgment." They also made requests for specific findings of fact and rulings of law. The bill of exceptions does not contain the motion

or the requests, but it is agreed that they may be considered as if extended in the record by force of the statement in the bill of exceptions that "The pleadings and all papers filed at the trial are made a part of these exceptions." The judge reserved his decision upon the motion, the requests for findings of fact and for rulings of law. Later, in the absence of counsel and subsequent to the trial, he filed a decision for the plaintiff, a refusal to make the findings and rulings, and a denial of the motion. On the back of the motion the judge made the following indorsement: "December 29, 1916. Motion overruled, and defendants' rights saved by exception and appeal." And the docket entry reads "(11) Mo. for judgment for Deft. Dec. 29–16. Overruled & deft. appeals and excepts Dec. 29–16."

Assuming without deciding that the exceptions of the defendants were duly saved, they must nevertheless be overruled. The judge in finding for the plaintiff must necessarily have found as a fact that the provision in the defendants' contract with the United States Government relating to "samples" was not annexed to the specifications submitted by the defendants to the plaintiff, and he must also have found that the plaintiff was without knowledge in fact of such a requirement in governmental contracts. In the absence of such evidence of knowledge on the part of the plaintiff, we are of opinion that the letters above quoted clearly establish a contract between the plaintiff and the defendants, and the breach thereof by the defendants.

No exception lies to the refusal of a judge sitting without a jury to make specific findings of fact. *Jaquith* v. *Morrill*, 204 Mass. 181. *Wells* v. *Wells*, 209 Mass. 282, 291.

No error of law apparent on the record appears to have entered into the decision of the judge. The finding for the plaintiff was based apparently on facts proved and the inferences of the judge therefrom. *Cochrane* v. *Boston*, 1 Allen, 480. *Knowles* v. *Bachelder*, 106 Mass. 343.

It follows that the exceptions must be overruled and the appeal dismissed.

*So ordered.*