WILFRED W. DAVIS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Norfolk. November 14, 17, 1919. — April 6, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Practice, Civil,* New trial, Findings of fact by judge. *Words,* "Memorandum of Decision," "Material," "Artifice."

A judge in denying a motion for a new trial of an action at law need not make any findings of fact.

Upon exceptions in an action at law, where it appeared that, in denying a motion for a new trial, the judge had filed a paper entitled a "Memorandum of Decision," it was *stated* that the paper was called so improperly.

While a paper, entitled a "Memorandum of Decision," filed by a judge accompanying an order denying a motion for a new trial of an action at law, ordinarily would form no part of the record upon exceptions taken to the order, where the paper expressly was made a part of the bill of exceptions, its contents were held to be before this court in every material aspect.

Statement, by RUGG, C. J., of the controlling principles of law respecting the granting of motions for new trials on the ground of newly discovered evidence.

The determination of a motion for a new trial of an action at law on the ground of newly discovered evidence rests within the sound judicial discretion of the trial judge.

At the trial of an action against a street railway company for personal injuries resulting from a foreign substance entering the plaintiff's eye coincidentally with an explosion upon or under a street car of the defendant, the plaintiff contended that the foreign substance was metal that blew out from a fuse box on the car, and the defendant contended that it was a bullet from a cartridge placed upon the track by a third person. The jury found for the plaintiff. The defendant moved for a new trial on the ground of newly discovered evidence which would tend to prove that, within forty-eight hours after the accident, a Roentgen ray photograph of the plaintiff's eye was taken, which revealed that the foreign substance was a bullet and not part of a fuse box. The motion was extensively heard twice and was considered at length by the trial judge, who denied it mainly on the grounds, that he did not place reliance upon the testimony of a witness, who first called the defendant's attention to the Roentgen ray photographs and who had taken the photographs, that he was not satisfied that the photographic plates were sufficiently identified as pictures of the plaintiff's eye and that the testimony of the witness was not of sufficient weight to lead his mind to the conclusion that it would have an effect to lead the jury to a verdict more favorable to the defendant in case a new trial was granted. There was evidence warranting the conclusions of the judge. *Held,* that the determination

of these facts by the judge was not subject to revision, and that his denial of the motion was proper.

In denying the motion for a new trial in the circumstances above described, the judge filed a statement of further findings, among which was a finding that the evidence was not newly discovered, that the evidence was cumulative, and that "artifice was practised" in the production of the photographic plates, which findings were made without supporting evidence; and from the statement it appeared that there were other inconsistencies in the findings of the judge; but it was *held*, that these errors did not affect nor vitiate the judge's main decision, that he could not place reliance upon the testimony which was relied on by the defendant to identify the photographic plates as pictures of the plaintiff's eye, and that the record showed no abuse of judicial discretion.

The action above described was twice tried. At the first trial, a physician called by the plaintiff testified that "There evidently was an X-ray taken of" the plaintiff's eye within three days after the accident. At the second trial, nine months later, the same witness testified, "An X-ray record shows that there was a foreign body in his eye of some sort." There was a verdict for the plaintiff at the second trial and exceptions of the defendant were overruled two years after the first trial. Within a month thereafter the motion for a new trial, above described, was filed. The judge found that the defendant failed in the exercise of due diligence to discover the evidence on which he relied in his motion. *Held*, that the finding was not without support in the evidence.

It is not error for a judge, who, upon the denial of a motion for a new trial, filed a statement of facts upon which he relied in so doing, to withdraw such statement from the files and two months later to restore it, after, upon a rehearing of the motion, he has affirmed his former action.

TORT for personal injuries sustained by the plaintiff on July 6, 1912, from being struck in the left eye by a piece of metal alleged to have been thrown from the defendant's car by reason of an explosion of a fuse box. Writ dated August 6, 1912.

In the Superior Court, the action first was tried before *Mc-Laughlin*, J., when the jury found for the plaintiff in the sum of $1,000. On motion by the defendant, the verdict was set aside on the ground that it was against the evidence and the weight of the evidence, and a new trial was ordered.

At the second trial, which was before *Irwin*, J., the jury found for the plaintiff in the sum of $15,000, and exceptions by the defendant were overruled by this court on January 28, 1916, in an opinion reported in 222 Mass. 475. On February 10, 1916, the defendant filed a motion for a new trial on the ground of newly discovered evidence. The motion was heard on March 4 and on April 8, 1916, and was denied on November 14, 1916, the judge making formal findings and rulings in a paper called a "Memorandum of Decision." In substance, these were as follows:

"The defendant in the above entitled case moves that the verdict of the jury be set aside and a new trial ordered upon the ground of newly discovered evidence. The defendant's motion is bottomed upon certain affidavits and X-ray pictures thereto attached. At the hearings thereon, the motion was opposed by the plaintiff. The parties were heard at length on two occasions. I have examined into the history of the case and considered all the matters and things that have been submitted to me, touching upon the defendant's motion.

"1. No authorities are required to verify the legal principle that where a trial of a cause has obviously resulted in a miscarriage of justice the court has the right to set the verdict aside; it not only has that right but in the performance of its duty it is bound to do so. It is an equally sound legal doctrine that courts are very cautious how they overthrow verdicts that are resultant of an exhaustive and deliberate trial of the issue presented. If our courts were to lightly regard the verdicts of juries and in off-hand fashion set them aside the result would be a complete subversion of our legal procedure.

"Now, as to the motion here presented.

"The defendant bases its contention that its motion to set aside the verdict and order a new trial ought to be granted upon the discovery in the way of affidavits attached to the motions, of three X-ray plates 'taken of the plaintiff's eye' shortly after his injury. The plaintiff received his injury on July 6, 1912. The X-ray examination of his eye is said by the affiant, Dr. Liebman to have been made by him on July 8, 1912, 'at the request of the physician in charge' at the Massachusetts Eye and Ear Infirmary. The hospital records of the case which were presented in evidence at the trial contain no reference of X-ray plates having been made. Dr. McDonald, the surgeon who performed the operation of removing the substance from the plaintiff's eye says in his affidavit: 'Neither at or before the time of the last trial had I any knowledge of the existence of X-ray plates showing the character of the foreign substance lodged in Davis' eye. I first learned that X-ray plates were in existence since the verdict had been rendered on the second trial.' While Dr. Liebman says that the plates were made 'at the request of the physician in charge' they appear to have served no valuable use, as no such fact was noted in the hospital records

nor were the plates submitted to Dr. McDonald, the master surgeon in the case. As relating to the surgical or legal phase of the plaintiff's case the X-ray plates appear for the first time on February 2, 1916, the date that Dr. Liebman telephoned to Mr. Pinanski saying 'I have three plates now in my possession . . . and you are welcome to see them if you choose' (Mr. Pinanski's affidavit).

"The hospital record of August 16, 1912, states 'Operation removed F. B. [interpreted by hospital official as meaning foreign body] from sclera and conjunctiva.' Does it require the aid of an X-ray lens to identify a cartridge bullet? From school-boy to man are not all among us familiar with the attributes of such a thing? Would there have been any hesitation in the two surgeons who removed the metal in recognizing it as a bullet? Yet of the several witnesses who gave to the jury a minute description of the metal that they had seen and handled no one of them, on examination and cross-examination, said the thing was a bullet.

"Properly verified X-ray plates are admissible in evidence in the trial of cases when they are deemed to have a tendency to aid the court and jury to determine the issue being tried. The plaintiff in this case contended at the hearings on the defendant's motion that the prints made from the X-ray plates in question here do not portray the substance which was in his eye at the time that the plates are alleged to have been made, and presented evidence in support of this contention.

"Roland Chester McKenzie, of Waltham, physician and surgeon who has made a special study and practice of ophthalmology, and has been connected with the Massachusetts Charitable Eye and Ear Infirmary since January, 1911, presented at the hearing by the plaintiff, testified in effect as follows:

"These X-ray photographs do not represent the condition of the plaintiff's eye as it is described and recorded in the hospital records made at the time of his treatment there. The hospital record of July 7, 1912, when the plaintiff was admitted, shows a perforation of the inner upper side of the globe and abrasion near the nasal side. The chart and pictures show the object in the outer lower side of the globe. On August 16, 1912, date of the operation, the hospital record states that 'Examination showed at

inner part of the globe a perforation in the sclera and conjunctiva and piece of metal could be seen.' It would have been absolutely impossible for the foreign body to have moved from the place where the hospital record states it to have been to the point where this chart and these pictures represent it to have been. The metal adhered to the eye. Again, the record of August 16, 1912, states that the 'eye turned outward.' Now, if the foreign substance were in the outer lower globe where the chart and picture represent it to have been, the eye would have been turned inward during the operation.

"It is the practice at the hospital in such cases as this, to note in the records of every case, anything that admits of a specific description. In the Davis case the record speaks only of 'F. B.' in the eye, meaning foreign body; it nowhere makes mention of a bullet.

"Shortly before March 4, 1916, the witness saw the X-ray plates in this case which then appeared to have been recently *passe partouted*, and the words 'Large Bullet' written thereon in a fresher, newer ink than the rest of the inscription. At the time that the plaintiff was treated at the hospital, it was not the practice to passe partout plates.

"The witness did not know until recently that the X-ray plates had been taken from the hospital to Dr. Liebman's office.

"Dr. A. E. O'Connell, of St. Vincent Hospital, Worcester, qualified as a Roentgen-ray specialist, had made more than six hundred X-ray plates during the past nine years presented by the plaintiff, testified in substance as follows:

"The location of a foreign substance in a human eye, as shown in these X-ray pictures, is entirely different from its location as stated in the hospital records. The chart and pictures here represent the foreign body to be in lower left or outer quadrant of the eye; the hospital records state it to have been in the upper inner quadrant of the eye. Radiograms or X-ray pictures are not pictures of the objects themselves, but of their shadows. The outlines of the object represented in these pictures are sharper, more distinct than he had even seen in any X-ray photograph, during his professional experience and observation.

"Asked if it were possible to artificially produce an X-ray plate or to alter, in a material way, an existing plate and the fact that

this had been done be beyond detéction, the witness replied, A
person experienced in X-ray work could easily invent an original
plate to represent what he chose to have it picture; and he could,
by painting or touching up an existing plate, and then photo-
graphing it, produce a negative which would defy detection of the
counterfeit.

"The evidence of these two doctors was not disputed nor in any
way qualified by the defendant. Upon a consideration of all that
was laid before me during the hearings upon the defendant's
motion I am not satisfied that the pictures produced by Dr.
Liebman and attached to the defendant's motion are sufficiently
verified to make them worthy of credence. On the contrary, in
view of all the circumstances attending the appearing of the
X-ray plates and the pictures printed therefrom, and the evidence
of Doctors McKenzie and O'Connell, I am quite satisfied that arti-
fice was practised in the producing of the plates and that they do
not truthfully represent the substance that was taken from the
plaintiff's eye by Doctors McDonald and Haskins.

"There is nothing here that is intended to asperse in any degree
the good faith of the defendant's attorney of record, Mr. Blackmur,
or of his immediate superior in the defendant's law department,
Mr. Sears. Neither by direct statement nor insinuation has any
person said or suggested anything tending to impute to these
attorneys any unworthy acts in this matter. There is no question
in my mind but that their information as to the existence of the
X-ray plates came to them in the way of their affidavits attached
to the motion.

"2. Moreover, the alleged newly discovered evidence is not
seasonably presented. Due diligence would have discovered it,
if it existed before the trials of the case; as shown by the court
docket entries, the case was entered September 3, 1912, tried to a
jury February 5, 1914. The defendant's motion for a new trial was
allowed April 4, 1914, the second trial was had October 26, 1914.
I have discovered nothing in the conduct of any person connected
with the case that tends to show that the defendant was misled or
deceived in any way touching upon the existence of X-ray plates.
But, per contra, Dr. McKenzie, eye specialist, a witness called by
the defendant at the first trial of the case, testified during the
presenting in evidence of the hospital records: 'There evidently

was an X-ray taken on July 8th. The X-ray really doesn't mean much.' Again, the same doctor called as a witness by the plaintiff at the second trial produced the hospital records and testified, 'An X-ray record shows that there was a foreign body in his eye of some sort.' These statements should have nudged the defendant to painstaking search for the result of the X-ray examination of the plaintiff's eye if it intended ever to rely upon it.

"I find and rule that the defendant failed in the exercise of due diligence to discover the testimony which it now offers in support of its motion.

"3. Furthermore, viewing the evidence that is now offered in a light most favorable to the defendant, it is merely cumulative. It would introduce into the case nothing unique; it presents no new element. The case was defended upon the theory that the substance taken from the plaintiff's eye was a bullet. The object was minutely described to the jury by the various witnesses who saw, who handled and who examined it, some of whom were men of more than the average intelligence, among them being two surgeons who extracted it from the plaintiff's eye and the chemist who assayed it. A most detailed word-picture of the bit of metal was presented to the court and jury, expressive of its every attribute. The proposed newly discovered evidence in nowise tends to disclose the source of the alleged bullet, excepting only by invoking the remote and speculative inferences that the plaintiff's injury resulted from the explosion of a cartridge upon the railway tracks, which theory was fully spread before the jury during the trial. The issue in this case was presented to the jury in a clear cut fashion . . . [Here followed a review of instructions given to the jury at the second trial to guide them in determining that issue.] . . . The jury visited the locus of the injury; they examined the fuse box of a type of car similar to the one from which the plaintiff was said to have received his injury; they saw and heard the testimony of the various witnesses; they listened to the argument of proficient and efficient counsel; they attended closely the instructions of the court, and upon a consideration of all this, rendered their verdict. Whatever the shape, size or substance of the metal found in the plaintiff's eye, the jury were warranted in deciding that it came from a fuse box of the defendant's car in the way of the plaintiff's evidence. There were several physical facts attending

the incident of the plaintiff's injury that were of more than mere passing persuasive force, that the metal which caused his hurt proceeded from a car of the defendant company, and from no place else. The plaintiff was standing at a station provided for the patrons of the defendant; while there and about six feet in from the edge of the station platform the car in question came to the station and stopped, he then being about opposite to the middle of the car. Shortly 'the car started up and it gave a kind of a jerk and stopped and there was a flash and a bang and some smoke;' there was a loud report, smoke and flame. 'Coincident with the report of an explosion and its accompanying smoke and flame the plaintiff was hit in the eye; then and there the substance in question entered his eye and he received the injury complained of.' Immediately, 'about a minute,' before this car approached the station, another car had come to and gone from the station on the same tracks and in the same direction that this car was proceeding. This fact, coupled with the further fact that an immediate search disclosed no cartridge shell in the vicinity of the station would seem to be a complete answer to the suggestion that the plaintiff's injury might have been caused by the exploding of a cartridge in the tracks upon its being run over by the car. There was evidence tending to show that directly after the report of the explosion a man was seen doing something to the car at the place whence the smoke and flame had come. One witness saw 'a man in uniform getting down under the car where the flames came from, his hands underneath the car.'

"Litigants are entitled to their deliberate day in court. They should then and there present their entire case. It is no reason for a new trial that one or for that matter that both of the parties may be heard to a better advantage and the facts and principles involved may be more carefully considered. As before stated, this case was presented to the court and jury with ability and zeal, by attorneys studied and practised in the law. It was submitted to an intelligent, fair and impartial jury, and I cannot conceal from myself the deep-seated opinion that the jury were warranted in finding the verdict they returned. Rarely, if ever, is a case tried in the courts to the complete satisfaction of the parties thereto. Something is usually done or omitted that they later think ought to have been otherwise. The defeated party is con-

fident that he would fare better in a retrial of the issue. Touching upon the matter of granting new trials on the ground of newly discovered evidence one of our ultimate courts has said, 'Motions of this kind are received with great caution, because there are few cases tried in which something new may not be hunted up.'

"The parties to this action have had their deliberate days in court. The issues involved have been passed upon and adjudicated. Legal process should some time reach its end and then quit; it ought not to proceed *ad libitum* of parties.

"In the exercise of my discretionary judgment, the defendant's motion for a new trial is overruled."

The foregoing statement by the judge of the grounds for his action in denying the motion for a new trial at the first hearing, originally was filed on January 20, 1917, later was withdrawn and on October 18, 1917, after the rehearing on the motion and the reaffirmation of his former order, again was filed by him "as of November 14, 1916."

On November 18, 1916, the defendant petitioned for a rehearing of his motion for a new trial. The petition was granted, and the rehearing was held on January 20 and on March 10, 1917. At that hearing, the defendant presented twenty-four requests for rulings, all of which were granted excepting the following, action of the judge thereon being stated after each request:

"4. On all the evidence adduced on the present motion the inference is not warranted that the defendant has been guilty of such negligence as to disentitle it to rely upon the alleged newly discovered evidence." The judge ruled, "Construed to be a question of both, and request for ruling refused."

"15. On all the evidence presented at the hearing and rehearing of this motion, the inference is not warranted that the X-ray pictures relied upon by the defendant are not pictures of the foreign body alleged by the plaintiff to have entered his eye." The judge ruled, "Question of fact and a ruling refused."

"23. On this motion the defendant is entitled as matter of law to findings of fact by the court on the following questions:

"A. Does the newly discovered evidence relied upon by the defendant actually exist?" The judge found, "The certain X-ray plates mentioned in the defendant's motion do exist."

"B. Can said newly discovered evidence be produced by the

defendant at a new trial of the case?" The judge found, "Said plates could be produced."

"C. If produced would it be likely to change the result of the former trial?" The judge found, "No."

"D. If said alleged evidence does exist, has the defendant been guilty of any negligence in not producing it at either of the former trials of this case?" The judge found, "Yes, if such evidence were in existence, due diligence would have discovered it."

"E. Did the plaintiff or either of his counsel at either of the trials of this case know from an inspection of the plates of said X-ray pictures or otherwise, that said X-ray pictures showed a foreign body such as is shown in the pictures now presented by the defendant as the basis for this motion?" The judge found, "There is no evidence that either of them did."

"F. Are the X-ray pictures now relied upon by the defendant in fact pictures of the foreign body that injured the plaintiff's eye before it had been removed from the plaintiff's eye?" The judge found, "I am not satisfied that they are."

"G. Was the reason why the plaintiff or his attorney or attorneys caused an analysis of said foreign body to be made by a chemist after it was taken from the plaintiff's eye a desire by annihilating said body or destroying its shape to prevent it from being shown to the jury at either trial of the cases?" The judge found, "There was no evidence presented that would warrant a finding that such a reason existed."

"H. When did the defendant through any of its counsel or agents first know that the X-ray picture had been taken showing the shape of the foreign body in the plaintiff's eye?" The judge found, "The affidavits of the defendant's counsel as to when information of the existence of the X-ray plates in question came to them were not disputed and their statements as to this are found to be true."

"I. Has the defendant been guilty of any laches or unreasonable delay in bringing its alleged new evidence to the attention of the court since the last verdict was rendered?" The judge found, "No."

"J. Did the defendant's counsel in fact appreciate the importance of the statements made by Dr. Roland C. McKenzie at either of the trials in this case concerning an X-ray picture?" The judge

found, "I don't know. Perhaps he ought to have. This interrogatory is too speculative to admit of a finding of fact by the court."

"K. Did the defendant's counsel at any time prior to the termination of the last trial of this case know or understand that an X-ray picture had been taken which would show the shape of the foreign body that injured the plaintiff's eye in such sense as to be of material assistance in determining the source from which said foreign body came?" The judge found, "I have no means of knowing the counsel's knowledge or understanding as to this. He says he didn't and I believe him."

Besides the rulings and findings above described, the judge filed a paper called a "memorandum," reading in substance as follows:

"Much of the testimony presented at the rehearing tends to confirm rather than qualify the decision previously made. For example, the witness and affiant, Dr. William Liebman, admitted that the indorsement on the jacket containing his original X-ray plates was made, not at the time that the plates were made, as stated in his early affidavit, but a year or more thereafter. His admission made at the rehearing that the plates do not represent the condition of the plaintiff's eye with respect to the position of the foreign body therein, confirms the finding of the court, that the X-ray plates were not sufficiently verified to make them worthy of credence — although Dr. Liebman knew since the day after he made them that the plates were erroneous, that fact was not acknowledged until after the court had discovered it at the previous hearings on this motion.

"Without going further into exhaustive detail than has heretofore been done, I am satisfied that I was not misled as to any facts material to my decision on this motion.

"After again carefully considering all matters that have come before me touching upon the entire case, and an examination of the various exhibits presented, including the X-ray book wherein Dr. Liebman recorded his X-ray plates, all the affidavits and counter-affidavits, and having heard the oral testimony of some of the principal affiants, I find that the proposed new evidence is not newly discovered; that it is cumulative; that it is not in point of character, weight or credibility, sufficient in the exercise of judicial discretion, to justify a disturbance of the verdict, or change my decision of the motion.

"Moreover, viewing the case in its entirety, I am of opinion that if the alleged newly discovered evidence could be deemed to be newly discovered and not to be cumulative, the motion should be denied as matter of discretion.

"The defendant's motion for a new trial is overruled."

Other material evidence and rulings of the judge are described in the opinion.

The motion was denied; and the defendant alleged exceptions.

*W. G. Thompson & P. R. Blackmur,* (*S. Gottlieb* with them,) for the defendant.

*D. J. Gallagher,* (*S. Bishop* with him,) for the plaintiff.

RUGG, C. J. This case comes before us on the defendant's bill of exceptions to proceedings had upon its motion for setting aside a verdict in favor of the plaintiff. The action is in tort for personal injuries alleged to have been received by the plaintiff through the blowing out of a fuse on one of the defendant's cars, whereby a piece of lead was projected into his left eye. One defence was that the injury was caused by a bullet. It was conceded by the plaintiff that the defendant was not liable if that were the cause. The first trial to a jury resulted in a verdict for the plaintiff. That verdict was set aside on the ground that "the weight of the evidence supported the contention of the defendant that on the occasion when the plaintiff suffered his injury no fuse was blown out and that the accident was due to some other cause." At the second trial a verdict was returned for the plaintiff. The cause came to this court on the defendant's exceptions, which chiefly raised the question whether as matter of law there was any evidence to support a finding for the plaintiff. Although recognizing it as a close case, the court were of opinion that enough evidence was presented to require the submission of the case to the jury, and the exceptions were overruled. Thereafter, a motion for a new trial was filed by the defendant on the ground of newly discovered evidence. The motion was supported by numerous affidavits. Summarily stated, the grounds set forth in that motion were that, within a few days after the date of the rescript from this court, a history of the case, published in the newspapers, was seen by Dr. William Liebman, a physician in Boston, who communicated to attorneys for the defendant the fact that at the Massachusetts Charitable Eye and Ear Infirmary, on July 8, 1912, within forty-

eight hours after the accident to the plaintiff, he took three different X-ray pictures, showing the clear outlines of a bullet from a cartridge in the plaintiff's eye, that he exhibited the plates to the plaintiff and called his attention to the fact that there was a bullet in his eye, and had conversation with him respecting a bullet on a street car track. Photographic prints were annexed to the affidavit of Dr. Liebman. To the eye of the ordinary person these appear unmistakably to represent a bullet; and in affidavits of firearm experts the object shown thereby was said to be a bullet. The defendant ought not to have been held liable if the object which entered the plaintiff's eye was a bullet. Evidence of this nature, if believed, would have completely exonerated the defendant. The motion was heard on March 4 and April 8, 1916. On November 14, 1916, the motion was overruled with a reference to a paper filed therewith called a "Memorandum of Decision." Thereafter, on November 18, the defendant applied for a rehearing, which was granted and a rehearing was had on January 20 and on March 17, 1917. It is in connection with this rehearing that these exceptions were taken. On August 16, 1917, the motion was denied, with a further accompanying paper called "Memorandum of Decision."

The exceptions of the defendant, upon which reliance now is placed, relate to the refusal by the judge to make certain findings of fact, to his denials of certain requests for rulings of law, and to "the overruling of its said motion . . . and the action of the court as set out in its said claim of exceptions."

The judge was under no obligation to make any findings of fact. He could not be required to do so by requests presented by the parties or either of them. *Lowell* v. *Bickford*, 201 Mass. 543, 545. *Jaquith* v. *Morrill*, 204 Mass. 181, 188. *Wells* v. *Wells*, 209 Mass. 282, 291. *O'Neill* v. *County of Worcester*, 210 Mass. 374, 377. *Given* v. *Johnson*, 213 Mass. 251, 253. *Clarke* v. *Second National Bank*, 177 Mass. 257, 264. *Puffer Manuf. Co.* v. *Yeager*, 230 Mass. 557, 563. Even in equity, where the practice in this particular is much more liberal than at law, it has been said that such a practice should not be encouraged, for its inevitable result would be to put on trial the magistrate instead of the case. *Warfield* v. *Adams*, 215 Mass. 506, 520. This is an action at law. The only obligation of a judge in an action at law is to pass upon pertinent requests

for. rulings of law seasonably presented and to decide the case. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 17–19. This principle applies as well to motions for a new trial as to other steps in the adjudication of the case, except that now, under St. 1911, c. 501, when a new trial is granted a judge is required to state his reasons in writing. That statute, however, has no application in instances where such a motion is denied. Findings of fact not infrequently are made and the reasons of a decision stated for the information of parties and counsel, but that is merely a practice of convenience. *Boyd, petitioner,* 199 Mass. 262. So far as findings of fact were made in the case at bar, they will be considered in connection with other exceptions.

The papers filed by the judge in the case at bar, each called "Memorandum of Decision," (as to the use of this phrase see *Commonwealth* v. *O'Neil,* 233 Mass. 535,) do not ordinarily constitute any part of the record, *Boyd, petitioner,* 199 Mass. 262, *Abbott* v. *Walker,* 204 Mass. 71, although under St. 1911, c. 501, when a motion for a new trial is granted the statement of reasons of decision is made a part of the record. *Edwards* v. *Willey,* 218 Mass. 363, 365. Both these papers, however, expressly are made a part of the bill of exceptions and therefore are before us for consideration in any material aspect. *Cressey* v. *Cressey,* 213 Mass. 191, 192.

The controlling principles of law respecting the granting of motions for new trials on the ground of newly discovered evidence are settled. The judge must find that the evidence is material. In this connection "material" means something more than simply competent and admissible; it must be weighty and of such nature as to its credibility, potency, and pertinency to fundamental issues in the case as to be worthy of careful consideration. Ordinarily the evidence must be something different in nature from that which is merely cumulative, although in this connection "cumulative" is given a somewhat restricted significance and the principle is not absolutely rigid. It sometimes has been said that the newly discovered evidence must be "of such a character that it would, so far as can be foreseen, have formed a determining factor in the result," *Hip Foong Hong* v. *H. Neotia & Co.* [1918] A. C. 888, 894, or "such as is presumably to be believed, and if believed would be conclusive," *Brown* v. *Dean,* [1910] A. C. 373, 374, see, however,

page 376. Those statements are too strong to express our practice. It is enough if the newly discovered evidence appears to be so grave, material and relevant as to afford a probability that it would be a real factor with the jury in reaching a decision. The motion ought not to be granted except upon proof of important evidence of such a nature as presumably would have genuine effect. It is not essential in all cases that the judge must be convinced that the verdict at a new trial would inevitably be changed by the new evidence. It must also appear commonly that there has been no want of diligence by the party making the motion in failing to have found the evidence before trial, and no laches in presenting it to the judge after its discovery. When a case has been fairly and fully tried upon correct principles of law, and a verdict has been rendered, it is in the interest of the Commonwealth that there should be an end of the litigation. It is easy for a defeated party to believe that the result would be affected by smaller matters than appear of significance to an impartial mind. See *Zeitlin* v. *Zeitlin*, 202 Mass. 205, and *Renwick* v. *Macomber*, 233 Mass. 530. These statements of the extent of the power and of limitations upon the right to grant new trials, illuminating, guiding and controlling as they are in most cases, are not necessarily decisive in every case. They must yield to the fundamental test, in aid of which most rules have been formulated, that such motions ought not to be granted unless on a survey of the whole case it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result. On the other hand, it is not imperative that a new trial be granted even though the evidence is newly discovered and, if presented to a jury, would justify a different verdict. A new trial may be granted whenever the judge is "satisfied that, by reason of some accident, mistake, or misfortune in the conduct of the trial, a new trial is necessary to prevent a failure of justice." *Greene* v. *Farlow*, 138 Mass. 146.

It commonly and rightly is said that such a motion is addressed to the discretion of the court. By such expression is implied absence of arbitrary determination, capricious disposition, or whimsical thinking. An exhibition of ungoverned will, or a manifestation of unbridled power is not the use of discretion. The word imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound

judicial discretion, enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy nor warped by prejudice nor moved by any kind of influence save alone the overwhelming passion to do that which is just. It may be assumed that conduct manifesting abuse of judicial discretion will be reviewed and some relief afforded. *Hayward* v. *Langmaid,* 181 Mass. 426, 429. *Manzigian* v. *Boyajian,* 183 Mass. 125. *Berggren* v. *Mutual Life Ins. Co. of New York,* 231 Mass. 173, and decisions there reviewed. *Sherman* v. *Collingwood,* 221 Mass. 8, 14. *Commonwealth* v. *Borasky,* 214 Mass. 313, 322, and cases collected. *Simmons* v. *Fish,* 210 Mass. 563, 572. *Keet* v. *Mason,* 167 Mass. 154. *Powers* v. *Bergman,* 210 Mass. 346. *Davis* v. *Custer,* 230 Mass. 603. *Freeman* v. *Boston,* 178 Mass. 403. *Ellis* v. *Ginsburg,* 163 Mass. 143. *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, 432, 434.

There is no ground for a contention that the judge in the case at bar misdirected himself as to the general rule of law by which he was to be guided in considering the motion. He stated the correct principles with substantial accuracy in the second paragraph of his first decision. In granting numerous requests presented by the defendant, he went quite as far as was justifiable and committed no error injurious to the defendant.

The chief emphasis of the argument for the defendant is that the record in its entirety shows an abuse of judicial discretion in the treatment of the whole matter of the motion for a new trial and that this is manifest by unreasoning prejudice, inconsistencies of findings, and failure to treat the motion in the light of the evidence with impartiality and intelligence. These are arguments serious in character. They demand serious consideration.

The judge heard the parties at whatever length they desired. After rendering his first decision, he reopened the matter and listened to a good deal of oral evidence in addition to numerous affidavits. Adequate time was taken for deliberation after the conclusion of each hearing before a decision was rendered. There is nothing in the record to indicate a hasty prejudgment or any want of patience in considering the matter.

The final finding of the judge, which refers to his earlier decision, is that "the X-ray plates were not sufficiently verified to

make them worthy of credence, . . . that the proposed new evidence is not newly discovered; that it is cumulative; that it is not in point of character, weight or credibility sufficient in the exercise of judicial discretion, to justify a disturbance of the verdict. . . . Moreover, viewing the case in its entirety, I am of opinion that if the alleged newly discovered evidence could be deemed to be newly discovered and to not be cumulative, the motion should be denied as matter of discretion." It hardly needs be said that, if the record showed that the last sentence were added in any other than a sound judicial spirit, it would be disregarded.

These are separate conclusions. They do not depend upon each other for support. They are treated by the judge each as a distinct and disconnected reason for refusing to grant the motion.

The finding that the evidence was not newly discovered in the bald way in which it is stated seems without support in view of the express finding that the attorneys for the defendant stated the truth as to their information concerning the X-ray plates. That being found as a fact, there is nothing in the record anywhere to indicate that the defendant through any agent or officer had knowledge of the X-ray plates or record at any time earlier than a few days before the motion for a new trial was filed.

The defendant's fourth request for ruling was that on all the evidence, "the inference is not warranted that the defendant has been guilty of such negligence as to disentitle it to rely upon the alleged newly discovered evidence." The judge construed that request "to be a question of both, and request for ruling refused." We construe this as meaning that he could not find both the facts therein stated, namely, that the evidence was newly discovered and that there was no negligence of the defendant in failing to ascertain about it earlier and therefore it was refused.

This refusal to rule and the finding that the evidence was not newly discovered should be considered in connection with the further finding that the defendant failed in the exercise of due diligence to discover the evidence on which it now relies. At the first trial a Dr. McKenzie, called by the plaintiff as a witness, testified, "There evidently was an X-ray taken of this on July 8th. The X-ray really doesn't mean much. . . ." At the second trial the same witness again called by the plaintiff testified, "An X-ray

record shows that there was a foreign body in his eye of some sort." The record does not compel a finding that these statements were made fraudulently or with a purpose to mislead, even when taken in conjunction with the destruction of the object, removed from the plaintiff's eye, in a chemical analysis and the refusal to permit the defendant to photograph it, which action was taken by others representing the plaintiff. The manner in which these references were made did not emphasize their importance but there was thereby brought to the attention of the defendant the fact that an X-ray had been taken, information which confessedly was not followed up by insistence upon discovery of the plates. This finding is not without support in evidence. It cannot be said as matter of law that the fact that the subject of X-ray, being brought out even in this way, ought not at that time to have called for further investigation by the defendant.

The judge was in error in ruling that the evidence of the X-ray plates and the hospital record concerning them was cumulative and not substantial evidence of a different character from any introduced at the trial. No X-ray plates whatever had been shown at the trial. No record concerning them was then produced. The infirmary record here disclosed purporting to have been made on July 8, 1912, only two days after the injury to the plaintiff, contained the words descriptive of the object disclosed by the X-ray plate, "Bullet localized." The plates themselves showed an object which to the untrained eye strongly resembles a bullet. These were pieces of evidence closely contemporaneous with the occurrence of the injury to the plaintiff. They constituted a distinct species of evidence differing in kind from any given at the trial. Of course there was evidence at the trial tending to show that the object in the plaintiff's eye was a bullet. The test, whether evidence is cumulative, is not whether it tends to establish the same fact but whether it is different in kind. "Cumulative evidence is additional evidence of the same kind to the same point." *Parker* v. *Hardy,* 24 Pick. 246, 248. *Watts* v. *Howard,* 7 Met. 478. *Chatfield* v. *Lathrop,* 6 Pick. 417. *Whitcomb* v. *Whitcomb,* 217 Mass. 558, 565. *Herrick* v. *Waitt,* 224 Mass. 415, 418. *Gardner* v. *Gardner,* 2 Gray, 434, 443. The newly discovered evidence here described with reference to the issues tried to the jury in principle cannot be distinguished from a receipt as evidence of payment

held to have been not cumulative in *Bacon* v. *Williams*, 11 Gray, 222.

A finding of fact was made in the first decision, which was not mollified in the second, to the effect that "artifice was practised in the producing of the plates." The word "artifice" in this connection implies craftiness and deceit. It imports some element of moral obliquity. A witness testified at an early hearing to the effect that "a person experienced in X-ray work could easily invent an original plate to represent what he chose to have it represent, and could by painting or touching up an existing plate and then photographing it produce a negative of such a character that the fact that it had been painted or touched up could not be detected," although the witness also said that "he did not see any reason in this particular case for basing any suspicion of the plates or pictures therefrom." No question was raised as to the admissibility of this evidence, but in the face of it, the defendant's counsel inquired whether any argument was to be made to the effect that the plates or photographs in question had been invented, tampered with, or that there had been any dishonesty on the part of Dr. Liebman or his assistant, for, if so, he desired to call him as a witness and to produce the plates, which had not been done up to that time although at a subsequent hearing after the first decision he was called and the plates produced. Thereupon the judge asked the plaintiff's counsel whether he intended to make any such contention. Upon receiving a reply in the negative, the judge said that he did not see any necessity for calling Dr. Liebman as a witness or for producing the plates. In connection with this incident, there appears in the record no evidence, either in the testimony of the two doctors or elsewhere, to support a finding of "artifice . . . in the producing of the plates."

We infer from the record that there may have been some misunderstanding on the part of the judge between what was disclosed by the X-ray plates and the photographs of those plates, which were the results of mechanical processes, on the one hand, and the calculations and charts made from and based upon those plates, which were the result of processes of the human mind, on the other hand. It is possible that there is in the record indication of other inconsistencies in the findings of the judge. It is assumed in favor of the defendant that there are for the purposes of this

decision. It is not necessary to review further his findings or the evidence in this particular.

The ultimate determination to be reached by the judge rested mainly on the view which he took of the testimony of Dr. Liebman, several affidavits from whom were filed and who also testified orally at one of the hearings. That was to be viewed in every aspect of its credibility, not only as to honesty of purpose of the witness but also as to his retentiveness of memory, scientific learning, skill in respect of X-rays, accuracy of record keeping, and all the other elements which affect trustworthiness of testimony. It is manifest that the judge did not place reliance upon that testimony and was not satisfied that the X-ray plates represented an object in the head of the plaintiff. One of his findings of fact, in response to the defendant's request 23 F, was to this express point. The plates in question were taken soon after the practice of taking X-rays was inaugurated at the infirmary. Comparatively inexperienced persons were then in charge of it and the department had not become thoroughly organized. There was testimony from Dr. Liebman to the effect that at that time "It was not an unusual thing to have plates lost, mislaid; brought downstairs out of the department by some doctor or other and not brought back, and he supposed that sometimes they would get out of the jackets and sometimes they would stay in the jackets. He didn't know of its happening, but it could happen with the system or that general method or lack of method in vogue, of course it was more than possible that A's plate could get into B's jacket and *vice versa:* there was not anybody having complete systematic control then." Confessedly the witness had made some changes in the records and of markings upon the jackets or envelopes of the plates and mistakes of calculation respecting the location of the object in the eye. The judge had presided over the trial and heard the object, taken from the plaintiff's eye, described by the surgeon who removed it and by others who saw it.

Without reviewing the record in further detail, we are unable to say that the distrust which was felt by the judge concerning the identification of the plate as representing the object in the head of the plaintiff was irrational. The credit to be given to a witness who testifies orally before a magistrate, even in equity where it is the duty of this court upon a full report of evidence to reach an

independent decision, is ordinarily for the judge who sees him and observes his manner of giving evidence, and his decision will not be revised unless found to be plainly wrong. In an action at law the question for us is whether there was any foundation whatever in law for the conclusion reached. *Wade* v. *Smith*, 213 Mass. 34. Nothing is more clearly a pure question of fact than the degree of weight that shall be given to the testimony of a witness. There are many reasons which may lead the tribunal charged with the decision of facts to discredit the testimony of a witness, and such a decision cannot be revised. *Commonwealth* v. *Russ*, 232 Mass. 58, 69, 70. Scarcely anything can be conceived of as more simple and devoid of complexity in law than settling the confidence to be reposed in a witness. Difficult as it may be in some instances, it involves little more than the exercise of experienced common sense. The degree of credibility to be attached to the statements of anybody cannot be ruled as matter of law. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452, 453.

The question is not whether we should take a different view of the evidence or should have made an opposite decision from that made by the trial judge. To sustain these exceptions it is necessary to decide that no conscientious judge, acting intelligently, could honestly have taken the view expressed by him. *Ogden* v. *Aspinwall*, 220 Mass. 100, 105. We are not prepared to decide that.

The decision as a fact that the X-ray plates were not sufficiently identified and that the testimony of Dr. Liebman was not of sufficient weight to lead his mind to the conclusion that it would have any effect upon a verdict, was decisive of the issue raised by the motion for a new trial. It was not necessary to consider any other or further ground. That ended the matter. The judge treats this ground as independent of the other grounds to which reference is made in his statement of reasons. He says in substance that even if wrong in all else that he has found or ruled, his decision would rest upon this ground alone. This ground stands by itself. It does not appear to be affected or vitiated in any degree by the errors which have been pointed out in his other rulings or findings. There was nothing wrong in so framing his decision that it might rest on several different grounds. It was far from being an abuse of judicial discretion.

There was no error of law in the withdrawal from and later

restoration to the files of the findings of fact made by the judge. *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31.

The whole record has been carefully examined. All the arguments put forward in the elaborate brief and in the full argument in behalf of the defendant have been considered. Our conclusion is that there is no ground in law for setting aside the decision of the judge respecting the motion. It fails to reveal an abuse of judicial discretion or any error of law touching the one separate, independent and sufficient ground upon which the decision of the judge is said by him to rest. It follows that the entry must be

*Exceptions overruled.*