HAROLD KNIGHT *vs.* WHITMORE MANUFACTURING COMPANY.

Hampden.   February 25, 1924. — April 12, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Corporation*, Officers and agents.   *Agency*, Scope of authority, Ratification of acts of agent.

At the trial of an action against a Massachusetts corporation for breach of a contract in writing for employment of the plaintiff by the defendant for a period of three years, there was a verdict for the plaintiff, and, upon exceptions in this court, the defendant's sole contention was " that the evidence was insufficient as a matter of law to warrant the finding that the alleged contract was expressly or impliedly authorized, ratified or acquiesced in by the defendant." There was evidence tending to show that the contract was made by correspondence between the plaintiff and one who was the president and general manager of the defendant; that it provided for the employment of the defendant for three years in making very material changes in the machinery, equipment and methods of a mill of the defendant which necessarily would take time to be carried out; that the president and general manager who employed him and the treasurer and a representative of a majority of the stock of the defendant coöperated with him in his superintendence; and that after a change of officers of the defendant and after the plaintiff had served the defendant for a period of two years and four months, he was discharged.   The records of the defendant were not in evidence and there was no evidence of the personnel or number of the directorate and no testimony as to a vote authorizing the employment of the plaintiff.   *Held*, that

(1) The question, whether the contract with the plaintiff was authorized or ratified or acquiesced in by the defendant, was for the jury, who might well infer that the president and general manager of the defendant had been given authority to make a contract for so long a period

when the work to be undertaken and carried out involved matters of such importance as to be likely to require several years for its satis- factory completion;

(2) It *was not decided* that, merely by virtue of his office as president and general manager, that officer had authority to make a contract for so long a time;

(3) It *was not decided* that no president and general manager has authority merely by virtue of his office to make a contract for employment for a period longer than his term.

CONTRACT for breach by the defendant of an agreement in writing to employ the plaintiff for three years from November 1, 1916, at a salary of $6,000 per year. Writ dated May 7, 1919.

In the Superior Court, the action was tried before *Irwin,* J. Material evidence is described in the opinion. A motion by the defendant that a verdict be entered in its favor was denied. There was a verdict for the plaintiff in the sum of $3,570. The defendant alleged exceptions.

The case was submitted on briefs.

*F. J. O'Neil & E. A. Lynch,* for the defendant.

*W. H. Brooks, J. P. Kirby & D. H. Keedy,* for the plaintiff.

WAIT, J. The plaintiff sues for breach of a written contract of employment for a term of three years from November 1, 1916, alleged to have been made by the defendant. After a verdict for the plaintiff, the case comes before us on a bill of exceptions to the refusal of the trial judge to direct a verdict for the defendant " on the ground that on all the pleadings and the evidence, the plaintiff cannot recover," which states that " the defendant's sole contention is, that the evidence was insufficient as a matter of law to warrant the finding that the alleged contract was expressly or impliedly authorized, ratified or acquiesced in by the defendant."

In August, 1916, the plaintiff, then, apparently, employed at Kalamazoo, Michigan, entered into negotiations with the defendant; and, at Springfield, met a representative of the defendant, Arthur B. Gladwin, its president and general manager, who employed its help. Early in October he received the following letter, on the letterhead of the defendant: " Holyoke, Mass., October 2, 1916. Mr. Knight:

We hereby agree to employ you as Superintendent of our mill for three years, to take effect from November 1, 1916, at $6,000.00 per year. Your duties will be classified as Superintendent of the Mill, — taking full charge of the Coating Department and its contingent responsibilities. We want you to assume full responsibility of our Manufacturing Departments, all employees in the Coating Room, on the Coating Machines, in the Reeling Room and in the Finishing Department are to be under your supervision. In short, we want you to assume full responsibility for the manufacture of our product, watching the efficiency of the machines and passing on the finished goods. Please be kind enough to send your acknowledgment of the Contract, and oblige, Whitmore Mfg. Co. A. B. Gladwin."

In order to help out his employers at Kalamazoo, the plaintiff asked for from one to three weeks beyond November 1; and by telegram, signed " A. B. Gladwin," the time was extended two weeks. This extension was confirmed by a letter, on the letterhead of the defendant, signed " Whitmore Mfg. Co. A. B. Gladwin." Under date of October 21, 1916, the plaintiff sent a copy of the letter of October 2 with the following addition: " I hereby acknowledge the receipt of your letter of October 2nd, 1916, of which the above is a copy, and accept the same and agree to it as a contract." On November 3, 1916, the plaintiff wired by day letter " To Arthur B. Gladwin Prest. Whitmore Mfg. Co. Holyoke, Mass. . . . Will report at your mill Nov. 14th. Am mailing formal acceptance of contract for your records." This was acknowledged, on the letterhead of the defendant, under date of November 4, 1916, in a letter signed " Whitmore Mfg. Co. A. B. Gladwin."

The plaintiff reported for duty on November 14, 1916; and there is no dispute that thereafter he worked for the defendant, and that he was paid by the defendant at the rate called for by the contract.

He was employed to make very material changes in the machinery, equipment, and methods of the defendant's mill, which would, necessarily, take time to be carried out.

Gladwin testified that the plaintiff continued to serve

under the contract, and was still so serving when Gladwin retired as president and general manager in February, 1918.

One Heywood testified that he was treasurer and representative of a majority of the stock of the defendant when the plaintiff began his superintendence; that he knew of his coming and observed how he did his work; that during the first month the plaintiff was there, nearly all his time was taken up in going over details with the plaintiff, planning for expansion of the business, ordering machinery and planning night work.

In February, 1918, Gladwin and Heywood retired as president and general manager and as treasurer. One White then came in as president and general manager.

The plaintiff kept on as superintendent under White, until, late in March of 1919, White called him to the office; expressed dissatisfaction with his work; declared they were running at a loss and discharged him. In the course of the talk, White said, so he testified: " Now, Knight, I knew that you had some sort of an agreement here, of one kind or another. I don't know as to the legality; I don't question it. I do want to go through with any agreement, legal or moral, that the Whitmore Manufacturing Company made, but I can't go through with it at the expense of the loss in money, the loss in trade and the loss in reputation that I am getting because of your bad work."

There was much testimony in regard to how the plaintiff did his work; and the jury found that he was not inefficient or unfaithful.

The records of the defendant were not put in evidence, nor was any evidence introduced of the personnel or numbers of the directorate. No officer or stockholder testified to any vote authorizing Gladwin to make a contract for three years; and no officer or stockholder, other than Gladwin, testified that he saw or knew the terms of the written contract.

The foregoing is substantially all the evidence upon authority, ratification or acquiescence. It is sufficient to entitle the plaintiff to go to the jury; and to justify a verdict in his favor. The jury could well infer that Gladwin had been

given authority to make a contract for so long a period when the work to be undertaken and carried out involved matters of such importance, so likely to require more than one, or possibly two, years for their satisfactory completion.

We do not decide that, merely by virtue of his office as president and general manager, Gladwin had authority to make a contract for so long a time; nor do we decide that no president and general manager has authority, merely by virtue of his office, to make a contract of employment for a period longer than his own term.   See *Dunton.* v. *Derby Desk Co.* 186 Mass. 35; *Henderson* v. *Raymond Syndicate,* 183 Mass. 443.   We confine our decision to the facts of this case.

A jury might well believe that the officers and stockholders of the defendant, realizing that such a man as. they needed for their superintendent might not be tempted by employment for so short a period as a year, had empowered their general manager to make such a contract as here was made. Especially might the jury so conclude when the treasurer and holder of a majority of the stock paid the plaintiff at the rate agreed; and for weeks discussed with him the important, complicated, and slowly-to-be-perfected changes on which he set out.   It is conceivable that the defendant might employ and keep the plaintiff at work in ignorance that he regarded himself as under contract for any particular time; but, upon the evidence, the jury were not bound to this conception.

There was no evidence of any distinct act of authorization or of ratification; but the facts abundantly support a conclusion that the defendant authorized, ratified, and acquiesced in the contract alleged.

The trial judge was right in refusing to direct a verdict for the defendant.

*Exceptions overruled.*