ALDEN BROS. CO. *vs.* JAMES DUNN & others.

W. F. NOBLE & SONS COMPANY *vs.* JAMES DUNN & others.

CHILDS BROTHERS COMPANY *vs.* SAME.

Suffolk.　November 29, 1927.— September 11, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Unlawful Interference. Equity Jurisdiction,* To enjoin strike, Damages. *Labor and Labor Union. Strike. Corporation,* Officers and agents. *Agency,* Scope of authority, Ratification of acts of agent. *Equity Pleading and Practice,* Master: evidence admitted de bene, order of evidence; Bill; Decree. *Evidence,* Admitted de bene, Relevancy and materiality, Competency, Inference. *Damages,* In suit in equity.

Each of two corporations brought a suit in equity wherein the bill was signed by the plaintiff's president. The bill in a suit in equity by a third corporation was signed by its treasurer. The contents of the bills were known and approved by the presidents and treasurers of the three corporations and by seven of the eight directors of a corporation which

owned almost all the stock of the three plaintiff corporations. The suits were fully tried on their merits. No director ever objected to the bills. *Held*, that

(1) There was no merit in a contention that the bills should be dismissed because of lack of authority to bring them;

(2) Ratification of the action of the officers of the corporations in bringing the bills might be inferred; a vote by the directors or stockholders was not necessary.

No exception lies to the admission of evidence *de bene* by a master in a suit in equity if the objection to such evidence is not later renewed and a motion made that it be struck out.

The order in which evidence is presented to a master hearing a suit in equity is within his discretion.

Under a prayer for general relief in the bill in a suit in equity, damages may be had for loss inflicted intentionally and for such loss as is the consequential result of the wrongful conduct complained of in the bill.

The plaintiffs in the three suits in equity above described were engaged in buying and selling milk at wholesale and retail, and the bills were against the officers and members of an unincorporated association which was a local of a union of milk wagon drivers and creamery workers. The bills alleged that the defendants were conducting an unlawful strike and sought to have them enjoined from intimidating the plaintiffs' employees and interfering with the patronage of the plaintiffs' customers. The bill in one of the suits contained a prayer for general relief but no prayer for damages. The other two bills contained prayers for damages. A master found that the defendants had instituted a strike in order to force one of the plaintiffs to enter into a contract with the union providing for a closed shop; that the defendants attempted to interfere with the delivery of milk by the plaintiffs' new employees by following them around and calling them names and trying to persuade them to leave their jobs; that the defendants tried to persuade the plaintiffs' customers not to patronize the plaintiffs; and that the defendants meddled with milk after its delivery intending to interfere with the plaintiffs' business. Final decrees were entered granting relief in accordance with the prayers of the bill and ordering the defendants in the first suit to pay damages for the loss of retail and wholesale customers by the plaintiff, and expenses incurred by it in connection with the strike. The defendants were ordered in one of the other suits also to pay damages. *Held*, that

(1) Testimony, that a man called at the house of the witness, who was a customer of one of the plaintiffs, and said he was a union man and that the union was trying to get customers not to take milk so that the union could win the strike, was admissible; an inference that the man was acting for the union was warranted;

(2) Evidence of the losses and expenses above described was admissible to show that the conduct of the defendants caused injury to the plaintiffs, whether or not the pleadings warranted a decree for damages;

(3) Evidence of the statements and conduct of a certain person regarding his agreements, and the agreements of another milk company, with the union, properly was excluded;

(4) Evidence relating to the price paid by the holding corporation for the stock of one of the plaintiffs and the number of shares of the

holding corporation received for that plaintiff's stock, was irrelevant and properly was excluded;

(5) The strike was illegal;

(6) Damages might be recovered in the first suit under the prayer for general relief;

(7) The final decrees must be affirmed.

THREE BILLS IN EQUITY, filed in the Superior Court on July 26, 1926, August 3, 1926, and August 7, 1926, respectively, by corporations engaged in the purchase and sale of milk and cream at wholesale and retail, against certain named officers and members of the Milk Wagon Drivers and Creamery Workers Union, Local No. 380, a voluntary unincorporated association. The bills alleged that "the remaining members of said . . . [association] are too numerous to be set forth . . . [in these bills], and . . . the names of a large number of the remaining members are to your complainant[s] unknown; and that those herein named fairly represent the interest of said remaining unknown members," who thereby were alleged to be joined as defendants. By amendment to each bill, numerous individual members of the association were joined as defendants.

The bill by Alden Bros. Co. alleged that, in consequence of its refusal to renew a contract with the association, the defendants who were employees of the plaintiff went on a strike which was illegal and was for the purpose of injuring the plaintiff's business; that the defendants conspired to injure the plaintiff, and in pursuance of such conspiracy endeavored by threats and other unlawful means to induce the plaintiff's employees to leave their employment, and endeavored to prevent all persons from patronizing the plaintiff. The bill sought to have the defendants enjoined from interfering with or continuing to interfere with the plaintiff's business; from intimidating, threatening, annoying or hindering the employees of the plaintiff or persons desiring to enter its employment; and from interfering with the trade or patrons of the plaintiff for the purpose of inducing them not to patronize the plaintiff.

The bills in the other two suits contained allegations that the defendants went on an illegal strike to compel Alden Bros.

Co. to enter into a contract with the association, the contract being on the condition that similar agreements should be made by these plaintiffs; that the defendants conspired to injure the plaintiffs' businesses; and that in pursuance of such conspiracy the defendants circulated false statements concerning the plaintiffs' products, and statements that the plaintiffs' employees were scabs and not members of the union and that the plaintiffs had combined with Alden Bros. Co. to establish open shop conditions; and that the defendants circulated among the customers of the plaintiffs and of Alden Bros. Co. cards asking such customers not to patronize the three companies. Each of these bills sought to enjoin the defendants from interfering with or combining to interfere with the plaintiff's business, and from interfering with the plaintiff's customers for the purpose of inducing them not to patronize the plaintiff.

Further description of the bills appears in the opinion.

The suits were referred to a master for hearing together. The master filed a report in each case and found that neither W. F. Noble & Sons Company nor Childs Brothers Company had any contract with the association, but operated under open shop conditions; that none of the employees of W. F. Noble & Sons Company were members of the union; that, after the expiration of a contract between Alden Bros. Co. and the association, and while negotiations were pending for a new contract, persons who were not officers of Alden Bros. Co., but who were officials of New England Creamery Products Company, a corporation which owned the stock control of the three plaintiff corporations, discovered that the employees of Alden Bros. Co. were to strike on a certain night; that these officials then immediately announced that Alden Bros. Co. intended to operate an open shop making no discrimination between union and nonunion men; that it did not wish the men to strike but desired them to continue to work; that the association thereupon held a meeting and voted for a strike, which took place; that the cessation of work by Alden Bros. Co.'s employees was not a lockout, but a strike, the purpose of which was to force Alden Bros. Co. to abandon the open shop and sign the contract providing

for a closed shop and compulsory arbitration of disputes; that most of the drivers of Childs Brothers Company joined the union and went on strike; that union members, particularly the strikers, had attempted in various ways to impede and interfere with the delivery of milk by the plaintiffs' new employees to its customers — by following the drivers around their routes, calling them "scabs" and other opprobrious names, trying to persuade them to quit their jobs, trying to persuade and persuading customers not to take milk from them, and, in some few cases, by actually assaulting them; that a good deal of milk had been moved from one place to another nearby; a good deal more had been carried away altogether, or spilled after delivery; that, from the fact that the milk was delivered in the very early hours of the morning when few people are abroad, that the union men were constantly following the drivers and taking note of where they left milk with the intention of interfering with the plaintiffs' business, that they knew where the milk was left and how easily it could be meddled with, it was a fair inference that they either did such acts or caused them to be done; and that a card was distributed among the customers of the three companies by members of the union reading as follows:

"Do Not Patronize
W. F. Noble & Sons of Somerville
Alden Bros. of Roxbury
Childs Bros. of Waltham
who have combined to establish (open
shop conditions) where union conditions
have existed for the past 15 years.
Signed     Executive Committee
Milk Wagon Drivers, Local 380"

In the first suit, the master found that, in consequence of the strike, the plaintiff suffered damage as follows: for loss of retail customers to whom it had delivered milk before the strike, $46,488; for loss of wholesale customers, $6,752; for policemen, $6,470; detectives, $1,527; extra trucking, $1,132; transportation, $985; extra labor, $3,247; bottles, $581; milk dumped, $255; loss on surplus milk, $1,988. In the second suit, the master found damages as follows: employees'

meals, $288.44; police compensation, $2,834.90; and hire of automobiles for police, $268.50. The damages found by the master in the third suit were $536.75 for police compensation.

By interlocutory decrees entered in each suit by order of *Morton*, J., the suits were recommitted to the master, who was directed to report objections and exceptions saved by the defendants to the admission and exclusion of evidence, and to report the facts concerning in what manner and to what extent the directors of the plaintiff corporations authorized the institution of the suits.

The master filed a supplemental report in each case. The facts found by him as to the second of the matters above described are set forth in the opinion. As to the matter of evidence admitted and excluded, the defendants in each case objected to the admission of evidence concerning damages. Mrs. Conaty, mentioned in the opinion, testified in the first suit that she was a customer of the plaintiff; that a man whom she did not recognize came to her house and said he was a union man; that the union was trying to get customers not to take milk so that the union could win the strike; and that union men were not able to work with nonunion men. This evidence was admitted by the master subject to the defendants' objection. Certain evidence offered by the defendants and excluded by the master is stated in the opinion.

The suits thereupon were heard by *Morton*, J., by whose order was entered an interlocutory decree in each suit sustaining the defendants' objections to so much of the master's reports as related to damages for hiring policemen and detectives and the admission of evidence thereof, and overruling the defendants' other objections. The plaintiff in the first suit waived damages to the amount of $581.

A final decree was entered by order of the judge in each suit in accordance with the prayers of the bill. In the first suit the defendants also were ordered to pay the plaintiff the sum of $60,647, with interest in the sum of $1,485.82; and, in the second suit, the sum of $288.44, with interest in the sum of $7.05. No damages were awarded by the final decree in the third suit.

The defendants appealed from the interlocutory and final decrees in each suit.

In this court, the defendants filed a motion that the first suit be remanded to the Superior Court; and, the plaintiff having consented to remit the sum of $5,000, the plaintiff was ordered to file such a remittitur in the Superior Court, and the motion was denied.

*H. R. Donaghue*, (*P. J. Donaghue* with him,) for the defendants.

*A. J. Aldridge*, for the plaintiffs.

WAIT, J.   The several plaintiffs are Massachusetts corporations engaged in the sale and delivery of milk and creamery products at wholesale and retail.   Their capital stock is owned almost wholly by the New England Creamery Products Company, a Massachusetts corporation, and their business is carried on as departments of its business.   Their presidents and treasurers comprise six of the eight directors of the Creamery Products Company.   The defendants are officers and members of Local 380 of the Milk Wagon Drivers and Creamery Workers Union of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, a voluntary unincorporated association.

The bills were filed on July 26, August 3, and August 7, 1926, and seek injunctive relief against injurious action directed against the plaintiffs in connection with an alleged strike by employees of the Alden Bros. Co.   Neither bill was authorized by formal vote of the directors of the plaintiff company.   The bills of the Alden and Childs companies were signed by the president, and that of the Noble company by the treasurer, in the names of the respective companies.   Their contents were known and approved by the presidents and treasurers of the companies and by seven of the eight directors of the New England Creamery Products Company before filing.   No director has ever objected to them.   There is nothing in the contention of the defendants that the bills lack authorization and, therefore, should be dismissed.   Ratification of the action of the responsible officers by the corporation may well be inferred; evidence of a vote by directors or stockholders is not imperative.

See *Knight* v. *Whitmore Manuf. Co.* 248 Mass. 531.  *H. C. Girard Co.* v. *Lamoreux,* 227 Mass. 277.

We find no reversible error in the admission or rejection of evidence.  No motion to exclude the testimony admitted *de bene* was made subsequent to its admission.  The master had power to admit testimony, which, if not strictly competent at the moment of admission, would become competent if other evidence was introduced later.  The order in which the evidence was presented was subject to his discretion.  He was not bound, at a later time and of his own motion, to exclude it, if the evidence expected to render it competent was not presented or was insufficient.  Not infrequently, a party, who has objected to the admission of evidence, desires it to remain in the case when once admitted. Unless the objection is renewed and motion made that the evidence be struck out, the party has no good exception to the original ruling admitting it.  *Haskell* v. *Cunningham,* 221 Mass. 49, 53.  *Doon* v. *Felton,* 203 Mass. 267, 271. *Commonwealth* v. *Johnson,* 199 Mass. 55, 59.  There was evidence sufficient to justify the master's inference that Mrs. Conaty's visitor was acting for the union.

The testimony with regard to damages was clearly admissible.  It was relevant and material if evidence of injury could be received under the pleadings.  There can be no doubt that evidence was admissible to show that the conduct complained of caused injury to the plaintiffs as alleged. Whether it could legitimately sustain a decree for damages is a different question; but if admissible for any purpose, the ruling allowing it was right.  The exclusion of evidence of the statements and conduct of Cummings with regard to the agreement made by the Whiting Milk Company, and of Cummings's contract with the union was not error.  Cummings was not a plaintiff nor an agent of the plaintiffs.  His statements and conduct were inadmissible against them. The existence and terms of an agreement of Cummings and the Whitings with the union were not evidence that Alden Bros. Co. had ever agreed to sign such an agreement.  *Rockport Granite Co.* v. *Plum Island Beach Co.* 248 Mass. 290, 295.  The questions put to Alden, Senior, and to Blodgett

concerning the price paid by the Creamery Products Company for stock of the Alden Bros. Co. and the number of shares of the former received for stock in the latter company, were clearly irrelevant and incompetent.

The evidence is not reported. We cannot say that the finding of the master that there was a strike and not a lockout was not justified. His finding must stand. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. The situation differs from that dealt with in *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310. The strike was illegal. See *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 60, 61.

The important question is, whether any decree awarding damages could properly be made. The bills of the Childs Brothers Company and of W. F. Noble & Sons Company contain prayers for damages. No contention is made in regard to the authority to decree damages in them if the evidence justifies it. No explicit prayer for damages was inserted in the bill of Alden Bros. Co., and none has been inserted by amendment. The bill contained a prayer for general relief. Upon such a bill relief in damages may be had for such injury as is the immediate and consequential result of the wrongful conduct complained against and for loss inflicted intentionally or with reasonable ground for belief that it would follow almost necessarily from the action taken. *DeMinico* v. *Craig*, 207 Mass. 593. *Hanson* v. *Innis*, 211 Mass. 301. It is true that such damage may be recovered in an action at law, *Martineux* v. *Foley*, 231 Mass. 220, *Martell* v. *White*, 185 Mass. 255, but it may also be obtained by decree in equity where it is specifically prayed for and is incidental to and part of full relief. *Burnham* v. *Dowd*, 217 Mass. 351. Relief, however, is predicated upon the allegations, not upon the prayers, of a bill. The prayer is nugatory unless the charges of the bill support a decree upon it. See *Pickard* v. *Clancy*, 225 Mass. 89, 95. Here the damage could not be set out specifically in the charging part of the bill. In large part, it did not occur until after the bill was filed and answer had been made. It followed and arose from the course of action complained against. The case was tried with the two cases in which allegations

of damage were set out, and no specific requests appear seeking limitation of evidence of damage because of the difference in the allegations of the bills.   In such circumstances we think the prayer for general relief suffices to permit the recovery.   See *Winslow* v. *Nayson*, 113 Mass. 411, 421.

It results that the orders must be

*Decrees affirmed with costs.*