JOSEPH S. BENNETT *vs.* THE ALUMO COMPANY.

Middlesex.    October 5, 6, 1931. — December 2, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Corporation*, Officers and agents. *Agency*, Scope of employment.

At the trial of an action of contract against a corporation manufacturing skates, there was evidence that the plaintiff proposed to one, who was treasurer and general manager of the defendant and who had charge of its factory and of the selling of its skates, that the skates be attached to shoes made by a second corporation and that the combined product be shipped by the second corporation to purchasers; that such an arrangement was made by said officer of the defendant and representatives of the second corporation; that the plaintiff, upon being requested to take charge of the selling for the second corporation, stated that he was willing but wished a certain salary; that,

upon his telling said officer that the second corporation would pay him only one half such salary and that he could not consider the proposition on that basis, that officer stated that he did not wish the arrangement to fall through and promised that the defendant would pay him the other half of the desired salary, payable monthly; that all of the plaintiff's dealings with the defendant were through that officer; that the plaintiff's attention was not directed to the defendant's by-laws or to limitations placed on that officer's powers under the provisions thereof; and that the plaintiff, after working for several months to sell the combined product, withdrew from his employment with the second corporation upon the defendant's refusal to make the monthly payments agreed upon by its officer. The plaintiff sought to recover certain of such monthly payments. *Held,* that

(1) Findings were warranted that the defendant's officer had authority to employ a salesman to sell the skates manufactured by the defendant and that he was authorized or held out as having authority to do things reasonably necessary to sell the skates, including those things which were incidental thereto;

(2) The agreement as to payment of the plaintiff by the defendant, though unusual in some respects, could not be said as matter of law to be so unusual or inappropriate as to be beyond the scope of the officer's authority in his efforts to promote the sale of the defendant's skates;

(3) The plaintiff was entitled to recover.

CONTRACT. Writ dated May 5, 1928.

The action was tried in the Superior Court before *Donahue*, J. Material evidence is stated in the opinion. After the jury had answered certain special questions submitted to them, the judge ordered a verdict for the defendant and reported the action for determination by this court.

*Lee M. Friedman*, for the plaintiff.

*T. H. Ray*, (*T. F. Brennan* with him,) for the defendant.

SANDERSON, J. This is an action of contract in which the plaintiff seeks to recover $333.33 a month for five months for services as an employee of the Joseph T. Wood Company, a corporation, herein called the Wood Company. The defendant is a manufacturer of skates. The plaintiff testified that he had been working for a shoe company, herein called the Herman Company, and was in charge of all its shoes sold as skating shoes at a salary with a commission amounting to $7,200 a year. The Herman Company made shoes but not skates. The plaintiff while in the employ of that company arranged through

one Collinson, the general manager and in charge of the defendant's factory, to have the Herman Company make shoes to which skates made by the defendant would be attached, and when combined would be shipped by the Herman Company on the defendant's orders. The Herman Company collected the accounts. The defendant did the selling and the plaintiff travelled for the Herman Company to see people interested in skating shoes. In the fall of 1927, the plaintiff, learning that the Herman Company did not want to continue in the business, told Collinson, who asked him to see the Wood Company, a manufacturer of shoes, and find out if it would be interested to make an arrangement similar to the one with the Herman Company. The Wood Company was affiliated with the Union Hardware Company, a manufacturer of skates. At the end of 1927 representatives of the Wood and Union Hardware companies and Collinson met the plaintiff and discussed the whole subject. The plaintiff was asked by the representative of the Union Hardware Company if he would consider taking charge of the selling for the Wood Company and he said "yes." Collinson was then asked to leave the room as they wanted to talk over terms in his absence. Later the plaintiff met Collinson and told him that he had asked the Wood Company for a salary of $8,000 a year to take care of the merchandising and selling of the Alumo skating outfits, but that they offered him only $4,000 a year which he could not consider. Collinson then said that he did not want the deal to fall through and that he would make up the difference by paying him at the rate of $4,000 a year, payable monthly; that the defendant would make the payments. The plaintiff said that on that basis he would be glad to go with the Wood Company, but he went back to the conference and said he could not consider going with the Wood Company on the basis of $4,000 a year. This was in November, 1927. Later Collinson met the plaintiff and asked him if he had reconsidered the offer of the Wood Company and would he accept it. The plaintiff said that he was going to take the offer insomuch as Collinson had agreed that

the Alumo Company would pay him the difference between what he wanted and what the Wood Company offered, and that Collinson said "All right." No length of time was spoken of. The plaintiff agreed to go with the Wood Company starting January 1, 1928, at $4,000 a year, payable monthly. The plaintiff worked out sample skate shoes for Alumo outfits along lines similar to those he worked out for the Herman Company, and, after Collinson had approved the samples, started out to sell them and travelled until May, 1928, the Wood Company paying him monthly and the defendant paying nothing. After working two months he made demand on the defendant for $666.66. This led to a controversy in which the defendant denied liability. On May 31 the plaintiff withdrew from his employment with the Wood Company. This action was brought on May 5, 1928. The defendant denied making a contract, pleaded payment, want of authority on the part of Collinson as its agent to bind the corporation, and the statute of frauds.

Under adequate instructions two questions were submitted to the jury which, with the answers thereto by the jury, were as follows: "Question 1. Did Collinson purporting to act for the defendant in 1927 make an oral agreement with the plaintiff to the effect that if the plaintiff would enter the employ of Wood Company the defendant would pay the plaintiff so long as he remained in the employ of the Wood Company at the rate of $4,000 a year payable $333.33 a month. The jury answer, 'Yes.' Question 2. If the answer of the jury to question number 1 is 'Yes', what was the date of that agreement? The Jury answer 'Latter part of November, 1927.'" The court then directed a verdict for the defendant and the plaintiff duly excepted thereto.

The report contains all of the evidence material to the issues involved. At the request of the plaintiff the judge reported the issues raised by the above rulings and refusals to rule for the determination of this court, for such disposition as the law may require.

The only question argued by the defendant is whether

there was evidence upon which the jury could find that Collinson was authorized to make the alleged contract with the plaintiff.

A by-law of the defendant provided that the treasurer should be the chief executive officer of the company, having general superintendence and direction of all other officers except the president, and in the recess of the board of directors shall have the general control and management of its business and affairs, subject, however, to the right of the board of directors to delegate any specific powers. The plaintiff did not have the burden of proving that specific powers had not been delegated. The defendant offered evidence tending to prove that the directors limited the power thus given the treasurer by appointing an executive committee to operate its business in accordance with authority given by another by-law, and that the plaintiff was notified that a committee had been appointed to take charge of affairs and more or less to subordinate Collinson and restrict his authority so that he was limited in what he could do without the consent of two others. Collinson also testified that he carried out the operations of the defendant under the direction of an executive committee. The jury, however, had the right to weigh the evidence in the light most favorable to the plaintiff, and could find that no information as to limitation of Collinson's authority had been given to him and that no limitation of the general authority given the treasurer in the by-law had in fact been made. They could also have found that Collinson was not acting under the direction of an executive committee. The plaintiff testified that his attention had not been brought to any of the defendant's by-laws. But the evidence as to the authority of Collinson was not confined to the provisions of the by-law. The plaintiff testified in direct examination without objection that Collinson had the title of treasurer and general manager of the defendant. In cross-examination the witness said that he knew Collinson held those positions from his signing of official correspondence, but not in any other way. The defendant's answers to interrogatories stated his position to be

that of treasurer and director, and as a part of his duties he supervised office, factory and sales. Collinson testified that the factory was under his direction, and that he alone supervised selling the goods; that to sell the goods he had to have men as salesmen who acted under his direction; that he told them whatever they had to be told about selling, and that he hired them subject to the approval of the board of directors. The plaintiff testified that all his dealings with the defendant were through Collinson; that he fixed prices and made arrangements about selling its goods, had the selling of them, and was in charge of its factory. Upon the evidence the jury would be warranted in finding that Collinson had authority to employ a salesman to sell the goods manufactured by the defendant. *Henderson* v. *Raymond Syndicate,* 183 Mass. 443. *Boston Food Products Co.* v. *Wilson & Co.* 245 Mass. 550. *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453, 458–459. *Knight* v. *Whitmore Manuf. Co.* 248 Mass. 531. *Condé Nast Press, Inc.* v. *Cornhill Publishing Co.* 255 Mass. 480, 485.

The remaining question is whether a contract, made in behalf of the defendant to pay the plaintiff, as stipulated, was so unusual in its nature that the corporation is not bound by it. It may be assumed that it is not often that it could be found to be in the ordinary course of business of one corporation to pay a part of the salary of a man if he would become an employee of another corporation. But the business of the defendant as a manufacturer of skates was unusual in that the skates were manufactured to be sold attached to shoes manufactured by some other concern. It was reasonably necessary when the arrangement with the Herman Company was about to come to an end that it should enter into an agreement with some other shoe manufacturer by which the shoes and skates could be sold as a unit. Upon the testimony in the case the defendant could not accomplish the result it desired of joining with the Wood Company and having the plaintiff enter its employment as salesman of the completed unit without agreeing to contribute to the plaintiff's salary. The plaintiff testified that he sold the defendant's skates only when he was with the Wood Company,

which was its selling agent; that he did not know whether he sold Alumo skates for the Wood Company or for the defendant. In his letter to the defendant he stated that in reliance upon the promise made by Collinson to contribute to his pay he accepted a proposition from the Wood Company to work for it in the merchandising and selling of the defendant's line of skates. As sales manager Collinson might be found, on the evidence, authorized or held out as having authority to do things reasonably necessary to sell the skates manufactured by the defendant, including those things which were incidental thereto. *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453, 458–459. We are of opinion that the agreement made by Collinson, though unusual in some respects, cannot be said as matter of law to be so unusual or inappropriate as to be beyond the scope of his authority as sales manager in his efforts to promote the sale of the defendant's goods. See *H. H. Brown Shoe Co.* v. *H. C. Brown Co. Inc.* 258 Mass. 343, 347; *McCrillis* v. *L. Q. White Shoe Co.* 264 Mass. 32, 35.

The case is distinguishable in its facts from *Sears* v. *Corr Manuf. Co.* 242 Mass. 395, and *New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483.

As the parties stipulated that the plaintiff entered the employ of the Wood Company on January 1, 1928, and continued therein to and including May 31, 1928, and as the jury has found that Collinson, purporting to act for the defendant, agreed that if the plaintiff would enter the employ of the Wood Company the defendant would pay him so long as he remained so employed at the rate of $4,000 a year, payable $333.33 a month, under the terms of the report that the case be disposed of as the law requires, judgment is to be entered for the plaintiff in the sum of $1,666.65 with interest from May 5, 1928.

*So ordered.*