NETTIE PECK'S CASE.

Bristol.   October 27, 1924. — November 24, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Workmen's Compensation Act,* To whom act applies.   *Agency,* Existence
of relation.   *County.   Municipal Corporations,* Officers and agents.
*Tuberculosis Hospital.*

Whether counties employ the laborers at the tuberculosis hospitals es-
tablished under St. 1916, c. 286, or whether they are employed by the
trustees of hospital districts, is to be determined by ascertaining the
purpose and intent of the Legislature.

It would require clear language to justify the conclusion that the Legis-
lature intended that acts in which only a section of a county has an
interest should be construed to be acts of the county.

The evident purpose and intention of the Legislature in making provision for the establishment of tuberculosis hospitals was to create tuberculosis hospital districts as separate entities to be managed by the county commissioners of their respective counties as trustees.

An employee in the laundry of the tuberculosis hospital in the county of Bristol, established in accordance with G. L. c. 111, §§ 78–91, is not an employee of the county of Bristol nor entitled to the benefits of the workmen's compensation act, the provisions of which had been accepted by the county.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board that the claimant, employed in the laundry of the Bristol County Tuberculosis Hospital, was a laborer employed by the county of Bristol at the time of her injuries and was entitled to compensation.

In the Superior Court, the claim was heard by *Lummus*, J., by whose order a decree was entered directing that compensation be paid to the claimant as a laborer employed by the county of Bristol. The county of Bristol appealed.

The case was submitted on briefs.

*F. S. Hall & S. P. Hall*, for the county of Bristol.

*M. E. McGuire*, for the employee.

SANDERSON, J. This case was heard by a single member of the Industrial Accident Board and then by the full board on review. Upon certification to the Superior Court under the provisions of the workmen's compensation act, a decree was entered April 10, 1924, adjudging that Nettie Peck, the employee, was a laborer employed by the county of Bristol and awarding her compensation. Bristol County appealed from this decree.

The decisive question on this appeal is whether Nettie Peck, the claimant, was an employee of Bristol County. She was employed at the tuberculosis hospital in that county, established in accordance with the provisions of St. 1916, c. 286 (G. L. c. 111, §§ 78–91), and on August 14, 1923, received an injury to her hand while working at a mangle in that hospital. She testified that she received her pay by check from the hospital; and the doctor who first attended her testified that his bill was paid by the trustees of the Bristol County Tuberculosis Hospital. The county

treasurer testified that he was treasurer of the hospital, but that this was a separate office from that of county treasurer; that the funds are borrowed for the hospital and turned over, the money being raised from all the cities and towns in the county, except New Bedford and Fall River; that these two cities pay nothing toward its support, each having its own hospital; that the treasurer sends his checks to the superintendent of the hospital, who was appointed by the trustees in 1919; that patients from outside the county are received upon the payment of $25 a week in advance, and the charge for patients from Bristol County is $9.10 a week; that there had been a deficit which was made up by assessing the towns and cities in the " district "; and that the trustees of the hospital have not accepted the workmen's compensation act. The general superintendent and resident physician testified that he received his appointment from the trustees of the Bristol County Tuberculosis Hospital; that he has been secretary to the trustees ever since the hospital has been in existence; that the county clerk has nothing to do with the trustees; that when the trustees organized to establish this hospital there were present at the first meeting the three county commissioners, the county treasurer and the witness; that applications for admission to the hospital are made through local boards of health, and payment for patients from Bristol County is made by town treasurers by checks drawn to the treasurer of the hospital.

The county of Bristol, in 1913, accepted St. 1913, c. 807, providing for payment of compensation to laborers, workmen and mechanics. The act providing for the establishment of tuberculosis hospitals (St. 1916, c. 286) is entitled " An Act to provide for the construction by counties of tuberculosis hospitals for cities and towns having less than fifty thousand inhabitants." By its provisions, as afterwards amended, the county commissioners of each county except Barnstable, Hampshire, Suffolk, Nantucket and Dukes County were required to provide adequate hospital care for all persons residing in towns having less than fifty thousand population within their boundaries and suffering from tuberculosis. G. L. c. 111, § 78. The responsibility for acquiring

land and constructing and maintaining buildings for such hospitals is placed largely on the county commissioners.    In the counties where hospitals are to be established, they are required to erect one or more hospitals.    G. L. c. 111, § 81. They are authorized to raise and expend money for acquiring land and constructing and equipping hospitals and for all other necessary purposes to carry out the provisions of the act.    They may borrow on the credit of the county and issue notes to be signed by the county treasurer and counter-signed by the county commissioners.    These securities may be sold by the county at public or private sale, but the proceeds are to be used only for the purposes specified in the act which authorized the establishment and maintenance of these hospitals.    The county commissioners are to apportion the cost to the several towns liable in accordance with their valuations used in assessing county taxes, and each town liable to contribute to the construction and equipment of a hospital is to pay its proportion of expenses into the county treasury in such manner as the county commissioners shall direct.    G. L. c. 111, § 83.    By § 85 of the act the county must provide for the care, maintenance and repair of the hospital, the cost thereof to be apportioned by the county commissioners to the towns liable.    In § 86 the county com-missioners are authorized to purchase, lease, or take by eminent domain such land not exceeding five hundred acres as they deem necessary or convenient for the purposes set forth in the act.

Section 87 provides that the county commissioners shall be trustees of the hospitals erected thereunder, and shall make suitable regulations for their government, and shall appoint superintendents and other officers and employees necessary for the proper conduct thereof.

It appears from these statutory provisions that the entire cost of the hospital completed and equipped, as well as the annual cost for the care, maintenance and repair of the hospital, is to be paid by the towns liable.    The towns thus liable in Bristol County are all the municipalities in said county excepting the cities of New Bedford and Fall River. The towns and cities subject to assessment, and whose resi-

dents are entitled to adequate hospital care, are referred to in the act as the "district served." G. L. c. 111, § 80. By § 90 of the act the mayors of Chelsea and Revere and the chairman of the selectmen of Winthrop are given the powers of county commissioners for the purposes of the act, and are designated a board of trustees for the "tuberculosis hospital district comprising Chelsea, Revere and Winthrop."

The case of *Bauer* v. *Mitchell*, 247 Mass. 522, was a suit in equity brought by four of the seven trustees of the Independent Agricultural School of the county of Essex against the three county commissioners of the county of Essex, who are the three remaining trustees of the school and who also constitute the board of trustees of the tuberculosis hospital of the county of Essex, erected and maintained under the provisions of St. 1916, c. 286. This suit was brought to prevent the defendants from constructing filter beds for the hospital on land appropriated for the purposes of the school. The land taken for the hospital is adjacent to that appropriated for the school, and the title to all the land used for the school as well as that used for the hospital is in the county of Essex. It was held on demurrer that the county of Essex was a necessary party. The ground of this decision was not that the tuberculosis hospital was a county institution, nor that the county commissioners as trustees were not proper parties, but that the county was the owner of all property directly or indirectly concerned in the subject matters of the suit and for that reason should be made a party. It was therein stated that "it would have been appropriate for the county to be represented by counsel, different from those representing the trustees of the hospital."

The fact that funds which paid the claimant came ultimately from certain towns in the county and not from the whole county is a circumstance to be considered on the question whether the relation of master and servant existed between the county and her, but it is not decisive. *Chisholm's Case*, 238 Mass. 412, 419.

This question whether counties employ the laborers at the tuberculosis hospitals established under St. 1916, c. 286, or

whether they are employed by the trustees of hospital districts, is to be determined by ascertaining the purpose and intent of the Legislature. At the time when the statute was enacted, the idea of districts in this Commonwealth was not new. For many years fire districts, as distinct from towns, cities, or counties, had been recognized as bodies to some extent independent, with rights and liabilities of their own. G. L. c. 40, § 44. *Rich* v. *Packard National Bank*, 138 Mass. 527. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450. They have been referred to as " *quasi* municipal corporation[s] of definitely restricted powers." *President & Trustees of Williams College* v. *Williamstown*, 219 Mass. 46. The provision by which money voted to be raised for these districts is assessed and collected by the town officers from inhabitants of the districts, is somewhat analogous to the provisions for raising money for tuberculosis hospitals from the towns in the hospital districts upon orders or warrants of the county commissioners. It seems to be an essential characteristic of a district that it shall be limited to a defined territorial or geographical area, whether the term is applied to district courts, district attorneys, school districts, improvement districts, water districts, or fire districts. The cities or towns exempted from the provisions of St. 1916, c. 286, as amended are those having more than fifty thousand inhabitants and those having less than fifty thousand inhabitants already possessing and continuing to furnish adequate hospital provision. G. L. c. 111, § 91. The word "adequate" is so defined in G. L. c. 111, § 80, that the municipalities in any county under obligation to contribute to the construction and maintenance of the hospital and whose residents are entitled to its benefits may be definitely determined. Such a defined portion of a county properly may be described as a district. It would require clear language to justify the conclusion that the Legislature intended that acts in which only a section of the county has an interest should be construed to be acts of the county.

By St. 1920, c. 532, the Legislature provided that certain indebtedness contracted in connection with a proposed tuberculosis hospital in Middlesex County authorized by St.

1916, c. 286, as amended, should be assessed upon the cities and towns in said county which would have " comprised the hospital district within said county." The Legislature, in making provision in regard to the apportionment of expenses incurred by the county of Essex on account of the tuberculosis hospital in that county, used the words " All the said cities and towns of said county, except the cities of Haverhill, Lawrence, Lynn, Newburyport and Salem, constituting the hospital district intended to be served by such hospital." St. 1923, c. 429, § 1.

Chapter 443 of St. 1922, is entitled " An Act relative to the membership of the employees of the Norfolk County Tuberculosis Hospital . . . in the Norfolk County Retirement Association." It provides that the employees of the Norfolk county tuberculosis hospital shall be deemed to have become members of the Norfolk county retirement association, established under G. L. c. 32. The chapter of the General Laws last referred to provides that any county may establish a retirement system for its employees, and all employees of the county on the date when the retirement system is established and all employees who enter the service of the county after the date when the system is declared established may become members of the association. It seems to have been assumed that an act of the Legislature was necessary to give employees at the tuberculosis hospital the same rights in the Norfolk county retirement association which employees of the county had.

By St. 1924, c. 443, passed since the entry of the decree in this case, the Legislature in providing for an enlargement of the present tuberculosis hospital district within the county of Essex so as to include in it the inhabitants of all cities and towns in the county of Essex who are suffering from tuberculosis, used these words: " all of said cities and towns shall constitute the Essex county tuberculosis hospital district." The act then provided for the payment of money in a certain event " to the cities and towns which constituted the district prior to the passage of this act." The legislative intention, as gathered from this statute of 1924, indicates that when some of the cities and towns in a county

support a tuberculosis hospital established under St. 1916, c. 286, they comprise a hospital district, and that even though all the cities and towns are included, this area, limited only by county lines, is still a tuberculosis hospital district.

If the conclusion were reached that the claimant was an employee of Bristol County, the whole county, including Fall River and New Bedford, which have hospitals of their own and are exempt from the benefits and burdens of St. 1916, c. 286, would be obliged to contribute to the compensation awarded under the workmen's compensation act. The evident purpose and intention of the Legislature in making provision for the establishment of tuberculosis hospitals was to create tuberculosis hospital districts as separate entities to be managed by the county commissioners of their respective counties as trustees. The claimant was employed by the county commissioners acting as trustees for a tuberculosis hospital district, which consisted of all the municipalities in Bristol County excepting New Bedford and Fall River, and was not an employee of the county of Bristol.

*Decree reversed.*
*Decree to be entered in favor of*
*Bristol County.*