HERBERT PACKARD *vs.* FIRST CONGREGATIONAL PARISH IN DUXBURY.

Plymouth.    March 12, 1926. — June 30, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Plymouth.    Duxbury.    Parish and Town.    Municipal Corporations.*

Upon exceptions by the First Congregational Parish in Duxbury to rulings in a decision by the Land Court ordering a decree registering the title to land in Duxbury it was *held*, that

(1) A deed of the town, by the selectmen, in 1923, pursuant to a vote of the town in 1900 authorizing the selectmen "to sell any of the vacant lands of the town that they deemed advisable," was valid to convey the town's title where it appeared that in 1924, under an article in a warrant to see if the town would rescind the vote of 1900, the town voted "to instruct the selectmen not to sell or convey any town land without the consent of the town," the vote in 1924 showing that previously there had been no intention to limit to the board of selectmen then in office the discretionary power given by the vote in 1900;

(2) The question, whether there was a parish capable of owning the land before 1828, in the absence of the early records of the parish and of the town, which in one way or another apparently had disappeared or could not be produced, was one of fact for the trial judge to determine; and his finding that the parish was not incorporated before 1828 was final;

(3) A ruling by the judge "that the town, before the separation [of the parish] as one corporate body exercised lawful dual functions both municipal and parochial and the church had no separate legal entity capable of taking and holding property," accurately stated the law;

(4) It appearing that, although in 1632 the land in question was set aside by the town for the first house of worship, that house was taken down in 1784, following a vote by the town, and the locus thereafter was open and unimproved land over which neither the church nor the parish exercised any acts of dominion or ownership, so that, when the parish became incorporated, the land no longer was used for parish purposes of the town, the decree properly was ordered.

PETITION, filed in the Land Court on December 8, 1924, for the registration of the title to land in Scituate bounded by Chestnut Street, Old Meeting House Road and the old burying ground.

In the Land Court, the petition was heard by *Smith,* J. Material facts are stated in the opinion. The judge ordered a decree for the plaintiff. The respondent alleged exceptions.

*H. R. Scott,* for the respondent.

*M. Collingwood,* for the petitioner.

BRALEY, J. This is a petition for the registration of a parcel of land in the town of Duxbury. The Land Court having found for the petitioner and ordered a decree, the case is here on the respondent's exceptions to the refusal of its requests for rulings, and to the rulings made.

The petitioner claims under deeds given to him by the town of Duxbury dated November 17, 1923, which were duly recorded, and he has since been in possession of the premises and built a house thereon. If the town owned the land, the vote at the annual town meeting held March 5, 1900, that "the Selectmen be authorized to sell any of the vacant lands of the Town that they deemed advisable," read with the action taken at the annual town meeting held March 1, 1924, under an article in the warrant to see if the town will rescind the vote of March 5, 1900, when it was "Voted to instruct the Selectmen not to sell or convey any Town land without the consent of the Town," was sufficient to enable them to convey in the name of the town its title to vacant lands. St. 1920, c. 591, § 11, now G. L. c. 40, § 3. The vote to sell shows the assent of the town to a sale when made if it is deemed advisable by the selectmen, and the action of the town also shows that there was no intention to limit this discretionary power to the board of selectmen then in office.

*Lumbard* v. *Trask,* 9 Met. 557.  See *Littlefield* v. *Boston & Albany Railroad,* 146 Mass. 268.

The report of the examiner states: "In the examination of this title, I have not been able to find anything on the records at the registry of deeds other than the deed given by the Inhabitants of the Town of Duxbury to Herbert Packard, the petitioner, November 17, 1923.  I have made extensive inquiry, and from all that I can learn outside of the records, it would appear that the land which the petitioner seeks to register has belonged to the town since the date of its incorporation; that at one time it was the site of the First Church.  The records for the Town of Duxbury under the date of May 16, 1785, show that the town voted that a committee appointed for the purpose 'take down the Old Meeting House when they think proper.'  The Meeting House was taken down some years later, and since that time the land has never been used for any purpose.  As far as I can learn no one has disputed the claim of the Town of Duxbury to the title to this land."

The respondent however contended that it was seised in fee under a title which vested prior to the conveyance by the town.

The trial judge was warranted in finding the following facts.  The land in question, hereinafter referred to as the locus, was part of the territory settled by the founders of the Colony of Plymouth.  In the development of the colony, a number of its inhabitants settled in a part of Plymouth known as Duxbury, and upon their petition they were permitted by the authorities of the colony to "gather" a church about 1632, and the first house of worship was erected on the locus.  Duxbury was separated from Plymouth and incorporated as a town in 1637.  A second meeting house was built in 1708.  The town voted in 1784 to take down this house, and erect a third meeting house elsewhere on "Tremont Street," which in the course of time disappeared, and a fourth meeting house was built on the Tremont Street location, which was in existence when the petition for registration was filed.  During the time elapsing since the second meeting house was taken down in 1784 to the date when the petitioner

entered into possession, the locus was unoccupied by either the town or the respondent. It was open and unimproved land over which neither the church nor the parish exercised any acts of dominion or ownership. The respondent under St. 1824, c. 106, § 1, was incorporated as a parish in 1828, and thereafter its parochial interests were managed by the parish, while the town conducted all municipal affairs. By custom in the early towns of the Commonwealth, town affairs and the affairs of the church were under the control of the town; the records of both church and town were combined, and kept as records by the town.

The respondent urges in support of its contention, that the parish acquired title in 1632; that the incorporation of the town in 1637 did not dissolve the parish or divest the parish of title; that if not organized in 1632 it was organized in 1828 under St. 1824, c. 106, and that the parish never lost its title. But, when the church was gathered and organized, and the first house of worship was erected, the parish is not shown to have been a corporation even by reputation. *Dillingham* v. *Snow*, 5 Mass. 547; *Stockbridge* v. *West Stockbridge*, 12 Mass. 400. St. 1836, c. 73, authorizing the respondent to convert its ministerial lands with the consent of the minister or ministers of the parish for the time being, the proceeds to form a fund, the income of which was to be used forever for the support of the ministry, did not vest title in, or empower the parish to dispose of the locus. *Stebbins* v. *Jennings*, 10 Pick. 171, 187. *McNeilly* v. *First Presbyterian Church in Brookline*, 243 Mass. 331, 337, 338. Nor, even if connected with a parish, is a church thereby made a corporation for the purpose of holding property. *Stebbins* v. *Jennings, supra*. See *Chase* v. *Dickey*, 212 Mass. 555, 560. The question, whether there was a corporation, in the absence of the early records of the parish, or of the town, which in one way or another apparently had disappeared, or could not be produced, was one of fact for the trial judge to determine. It was not a question of law. *Bassett* v. *Porter*, 4 Cush. 487, 492. The finding that the parish was not incorporated before 1828 is final. *Curtis* v. *Brown*, 219 Mass. 157, 159. *Hartt* v. *Rueter*, 223 Mass. 207, 212. And the

ruling "that the town, before the separation, as one corporate body, exercised lawful dual functions, both municipal and parochial, and the church had no separate legal entity capable of taking and holding property" accurately stated the law.

It appears that after the town was incorporated it exercised parochial as well as municipal functions, and property even if originally used by the parish for parochial purposes would, upon the parish becoming a town, be held by the town. *Lakin* v. *Ames*, 10 Cush. 198. See *Milford* v. *Godfrey*, 1 Pick. 91, 97, 98. The parish, however, having been incorporated in 1828, became separated from the town. While it is well settled that, upon separation, the parish was entitled to land which had been appropriated and used for parochial purposes, yet land, the use of which for such purposes had finally ended during the dual relationship, remained the property of the town. *First Parish in Medford* v. *Pratt*, 4 Pick. 222. *Stebbins* v. *Jennings, supra. Ludlow* v. *Sikes*, 19 Pick. 317, 323. *First Parish in Medford* v. *Medford*, 21 Pick. 199. *Lakin* v. *Ames, supra.* The court therefore correctly held and ruled "that when the town in 1784 voted to take down the second church building and erect one elsewhere, locus then ceased to be used for parochial purposes; that the title to the land . . . remained in Plymouth Colony till 1637, and thereafter in the town of Duxbury until the deed to the petitioner, and that the church could not acquire any title to locus by adverse possession as against the town before the separation and has not since."

We have considered all the exceptions in so far as argued and, finding no error of law, they are overruled.

*So ordered.*