BERNHARD A. LARSON *vs.* JEFFREY-NICHOLS MOTOR
COMPANY.

Suffolk.    March 10, 11, 1932. — May 24, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Contract,* Novation, Of employment. *Frauds, Statute of. Practice; Civil,*
Requests, rulings and instructions, Findings by judge, Exceptions.

It *was stated* that a contract, whereby a corporation dealing in automobiles
hired an employee at a certain salary per year, plus a certain bonus on
all sales of automobiles by the corporation, was capable of being per-
formed fully within one year, although it might extend beyond that
period, and was not a contract within the statute of frauds, G. L. c. 259,
§ 1, Fifth.

It *was stated* that a memorandum addressed to the employee above de-
scribed, signed by an officer of the corporation under authority from the
officer empowered by the by-laws to hire employees, and stating that
such salary and bonus were "O. K.," was a sufficient memorandum
under the statute.

During the first year of the contract of employment above described, a
second corporation took over all the assets and assumed all the liabili-
ties of the first corporation. The by-laws of the second corporation
gave power to appoint employees to the directors only. The employee
thereafter, without an express new arrangement being made, worked for
the second corporation in the same capacity in which he had worked for
the first corporation, until about eight months of the second year had
expired, when he was discharged without cause. Up to this time he had
been paid the salary specified in his contract with the first corporation,
but had not received the specified bonus. He had requested payment
of the bonus at the end of the first year, but had been asked by the
general manager to delay claim therefor because of the financial con-
dition of the second corporation. A further demand for the bonus at
about the time of his discharge was refused. In an action by him
against the second corporation for his salary for the period between the
time of his discharge and the end of the second year, and for the bonus
for a period of two years, it was *held,* that the plaintiff's original con-
tract with the first corporation did not become the contract of the de-
fendant by way of novation, and that the plaintiff could not recover.

A judge hearing an action of contract without a jury cannot be required
to act upon requests for findings of fact.

CONTRACT.    Writ dated October 5, 1928.

The second count of the plaintiff's declaration was as
follows:

"And the plaintiff says that on February 2, 1927, he

entered into a contract with the Jeffrey-Nichols Company whereby he was to perform services for said Jeffrey-Nichols Company from the time of said contract until the second day of February, 1928, and thereafter from year to year until said contract should be terminated prior to February 2 of any year by either party; that he was to receive as compensation for such services the sum of $4,500 a year, payable in ratable weekly instalments, and in addition thereto, a bonus of $2.50 for each new car sold at retail by said Jeffrey-Nichols Company during the period of the plaintiff's employment, and a like bonus of $2.50 on each used car so sold, said bonus to be paid at the end of each year of the plaintiff's service; that on or about August 1, 1927, the Jeffrey-Nichols Company discontinued doing business and all of its assets and liabilities, including said contract with the plaintiff, were assumed by the defendant; that without any fault of the plaintiff and without any notice, the defendant discharged him from its service on or about September 29, 1928, having paid him a weekly salary computed on said basis of $4,500 a year but having paid him no bonus whatsoever from the time of his employment: Wherefore the defendant owes him the amount of his wages from September 29, 1928, to February 2, 1929, in the sum of $1,557.72, bonus on three hundred fifty-two new cars and five hundred eleven used cars sold during the year ending February 2, 1928, or $2,157.50, bonus on three hundred seventeen new cars and five hundred eleven used cars sold between February 2, 1928, and September 29, 1928, or $2,070, and bonus on the estimated number of one hundred fifty new cars and two hundred fifty used cars that would normally be sold from September 29, 1928, to February 2, 1929, or $1,000."

Among other defences, the defendant pleaded the statute of frauds.

The action was heard in the Superior Court by *Brown*, J., without a jury. Material facts found by the judge and rulings requested by the plaintiff and refused by him are described in the opinion. He found for the defendant. The plaintiff alleged exceptions.

*W. B. Luther,* (*V. S. Bigelow* with him,) for the plaintiff.
*E. C. Park,* for the defendant.

CROSBY, J. This is an action of contract, in two counts, to recover for the alleged breach of an agreement to employ the plaintiff as manager of the used car department of the defendant. The case was tried before a judge of the Superior Court, without a jury, upon the second count, the first count being waived by the plaintiff. The judge made certain findings of fact, and found for the defendant. The sole question is whether this finding was warranted on the facts and the proper inferences which could be drawn therefrom. The evidence is not reported. The plaintiff excepted to the finding, and to the judge's refusal to find and rule as he requested.

The following and other facts were found by the judge: On February 1, 1927, the Jeffrey-Nichols Company and the defendant Jeffrey-Nichols Motor Company were corporations organized under the laws of and doing business in this Commonwealth. The stockholders in both corporations were identical except that the defendant was a stockholder in the Jeffrey-Nichols Company. Charles E. Jeffrey, Jr., was president of the Jeffrey-Nichols Company, and the president and treasurer of the defendant. The by-laws of the Jeffrey-Nichols Company provided that the president should appoint its employees, while the by-laws of the defendant vested this power solely in the directors. On February 1, 1927, one Little was in the employ of the Jeffrey-Nichols Company as retail sales manager, and on April 14, 1927, became general manager of that company. Under specific instructions from Jeffrey and with full knowledge on his part of the terms of hiring, Little engaged the plaintiff as manager of the used car department at a salary of $4,500 a year, plus a bonus of $2.50 on all sales of both new and second hand cars, the employment to commence February 2, 1927. The terms were set forth in the following memorandum, "Ben" being the plaintiff and "Bill" the said Little: "Ben Saw Mr. Jeffrey today. O. K. on salary 4500. & bonus new & used cars 2.50. Better resign at Henshaws at once. Call me. Bill." The plain-

tiff entered upon his duties and received $88 weekly from the Jeffrey-Nichols Company until July 31, 1927. On or about that date, the defendant took over all the assets and assumed all the liabilities of the Jeffrey-Nichols Company. Little thenceforth was in the service of the defendant as general manager. Without any new understanding the plaintiff worked for the defendant in the same capacity as he had worked for the Jeffrey-Nichols Company, and received the same weekly payments until September 29, 1928, when he was discharged without cause by Little acting under specific instructions from Jeffrey. The plaintiff made no claim upon either company for the bonus until shortly after February 2, 1928, when he brought the matter to the attention of Little who asked him to delay making any such claim for the present in view of the unsatisfactory financial condition of the defendant. The subject was not mentioned again until about the time of the plaintiff's discharge, when he made demand for the bonus on Jeffrey and was refused. During the time he worked for the Jeffrey-Nichols Company four hundred ninety-eight cars were sold. From the time the plaintiff worked for the defendant until February 2, 1929, when his second year's contract would have expired, ten hundred eighty-six cars were sold.

The plaintiff's contract with the Jeffrey-Nichols Company was valid. It was a contract for one year. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. It was not a contract within the statute of frauds, G. L. c. 259, § 1, Fifth, because it was capable of full performance within one year, although it might extend beyond that period. *Rowland* v. *Hackel*, 243 Mass. 160, and cases cited at page 162. Moreover the memorandum given by Little under authority from Jeffrey was sufficient under the statute. *Jacobson* v. *Perman*, 238 Mass. 445, 448. It is well settled that a third party cannot in this Commonwealth recover on a contract made merely for his benefit. *Griffin* v. *Cunningham*, 183 Mass. 505, 509. If the plaintiff can prevail in this action it is on the theory that his original contract with the Jeffrey-Nichols Company became the contract of the defendant by

way of novation. To recover on that ground it must be proved not only, as here, that there was an existing valid original obligation, but that there was an agreement of all parties to the new contract, the extinguishment of the old contract, and a valid new contract. *Wright* v. *Hanna*, 210 Penn. St. 349. *Jones* v. *Commonwealth Casualty Co.* 255 Penn. St. 566. *Cox* v. *Baltimore & Ohio Southwestern Railroad*, 180 Ind. 495. *Hayward* v. *Burke*, 151 Ill. 121. See also cases collected in 46 C. J. at pages 579–580.

Although we do not find any case directly in point, two cases decided by this court involve questions somewhat analogous. In *Aldridge* v. *Fore River Ship Building Co.* 201 Mass. 131, the plaintiff made a written contract with the Fore River Ship and Engine Company by the terms of which he was to work for it during a term of five years from January 1, 1902, at a stated weekly wage in cash, and the additional compensation at the end of each year of service of $1,000 par value of the common stock of the corporation. The plaintiff continued in this employment until September 8, 1904, when the company became insolvent and its assets and business were purchased at a foreclosure sale by the defendant corporation, which was organized as a part of a reorganization plan. The business was continued without interruption and the same man was president of both corporations. On the same day the defendant sent to the plaintiff and posted in its shops a bulletin notifying employees that the property had been purchased by it, and stating "employees are invited to continue in their present positions." In December of the same year the plaintiff was discharged without fault on his part, and brought an action for breach of contract against the defendant, contending that the bulletin, which was accepted by him by continuing to perform the same work he had performed for the original company at the same weekly pay, made the defendant liable according to the terms of his written contract with the Fore River Ship and Engine Company. This court held, however, that the terms of the bulletin and its acceptance by the plaintiff did not import the old contract into the relation estab-

lished between the plaintiff and the defendant. It was said at page 134: "The defendant agreed to continue the 'positions' of old employees, which can mean only the general character of work, but it said nothing about compensation or length of service or how service might be ended. These and other terms of employment were left open to be fixed by further agreement . . . . The plaintiff had a right, notwithstanding the continuance of his work for the defendant, to assert his claim in the bankruptcy court against the Fore River Ship and Engine Company or in a court of equity if a receiver was appointed. The bulletin is not ambiguous in terms and is complete. Its words 'present positions' do not refer to pre-existing contracts, nor incorporate their terms by implication."

If it be assumed that Little, as the general manager of the defendant, had ostensible authority to make a contract of employment in behalf of the defendant, and that a contract with the plaintiff, in the same terms as the old contract with the Jeffrey-Nichols Company, if made by Little would have been binding on the defendant, see *Knight* v. *Whitmore Manuf. Co.* 248 Mass. 531, *Condé Nast Press, Inc.* v. *Cornhill Publishing Co.* 255 Mass. 480, *McCrillis* v. *L. Q. White Shoe Co.* 264 Mass. 32, *Judge* v. *National Security Bank of Boston,* 272 Mass. 286, the findings in the case at bar do not warrant the conclusion that such a contract was ever made by Little. The only facts in the present case from which to infer that the parties assented to a new contract in the same terms as the old are that the plaintiff continued to do the same work as he did before the defendant took possession of the business, that he received the same pay therefor, and that when he spoke to Little about being paid a bonus at the end of one year Little asked him to wait because of the financial condition of the company. Nothing more appears here than there was in *Aldridge* v. *Fore River Ship Building Co.* 201 Mass. 131. There is nothing to show whether Little referred to the bonus which was due the plaintiff before the defendant took charge of the business or to the bonus which was due afterwards, or to both. The case cannot be distinguished

in principle from *Aldridge* v. *Fore River Ship Building Co.* 201 Mass. 131, and is governed by it. See also *Ewing.* v. *Composite Brake Shoe Co.* 169 Mass. 72.

In the case of *Horton* v. *Wickwire Spencer Steel Corp.* 239 Mass. 584, relied on by the plaintiff, it appears that there was considerable discussion about terminating the contract, and a proposition made by the defendant's manager was reduced to writing, but the defendant finally agreed in writing to continue the old contract without change. The facts therefore were wholly different from those in the present case, where there was no express contract between the plaintiff and the defendant, but where it is sought to imply one from the conduct of the parties. The cases of *North Anson Lumber Co.* v. *Smith*, 209 Mass. 333, and *Kirtley* v. *C. G. Galbo Co. Inc.* 244 Mass. 179, are not applicable to the case at bar.

The plaintiff excepted to the failure of the judge to give eight requests. The second was that "On all the evidence the plaintiff is entitled to recover on his second count." It is obvious in view of the findings that the refusal so to rule was not erroneous. The remaining requests were for findings of fact. A judge sitting without a jury is not required to act upon requests for findings of fact. *Puffer Manuf. Co.* v. *Yeager*, 230 Mass. 557. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 494. It appears, however, that many of the facts referred to in the requests were found by the judge, and are set forth in his statement of findings.

Even if the requests for findings had been granted, the plaintiff in view of the findings made was not entitled to a ruling that he was entitled to recover. Correct practice does not require that exceptions be sustained when it is not apparent upon the whole that some substantial error injuriously affecting the rights of parties has been committed. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 19.

It follows that the entry should be

*Exceptions overruled.*