### C. LEROY SEAVER *vs.* ONSET FIRE DISTRICT.

Plymouth.  November 17, 1932. — February 23, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Municipal Corporations*, Officers and agents.  *Contract*, Consideration, Validity, Of employment.  *Onset Fire District.*

By St. 1924, c. 408, the Onset Fire District was authorized to maintain a water department and it was provided that authority thus granted should be vested in a board of water commissioners subject to "such instructions, rules and regulations as said district may impose by vote."  At its annual meeting in 1926 the district elected the same person as treasurer and clerk and, upon an article in the warrant, "To see if the District will pay the Clerk, Treasurer, Auditors, Prudential Committee and Water Commissioners for services for the ensuing year, appropriate money for the same, or act anything thereon," voted that the treasurer and clerk have charge of all the books and do the bookkeeping for both the departments of the prudential committee and of the water department, and fixed his salary at $1,500, part to be paid by each department.  The same person was elected in 1927 and similar action was taken as to his salary.  At the annual meeting in 1928, a different person was elected as treasurer and clerk of the district and his salary was fixed at $500 without further definition of his duties.  Three days later, the board of water commissioners voted that the person, using his name, who was the former incumbent of the office of treasurer and clerk be appointed "Clerk, Collector and Bookkeeper of the Board of Water Commissioners . . . for the following year" at a salary of $1,000 and he took charge of the

office. About two weeks later, the district at a special meeting voted in substance that all financial luties of both departments be performed by its treasurer, and the water commissioners then refused to permit the person whom they had elected as clerk, collector and bookkeeper to enter the premises. After the passage of one.year from the time of his appointment by them, he brought an action of contract against the district for the amount the water commissioners had voted him as salary, and there was a verdict in his favor. Upon exceptions by the defendant, it was *held*, that

(1) The vote of 1926, by reason of the limitation set in the article in the warrant, was not effectual beyond "the ensuing year";

(2) The board of water commissioners acted within the powers given them by St. 1924, c. 408, § 7, in employing the plaintiff in 1928 as "Clerk, Collector and Bookkeeper" in its department "for the year following";

(3) By the vote of the board of water commissioners, the plaintiff acquired no public office, but a mere employment, so that the rule, that an appointment to a salaried public office creates no contract on either side for any definite term, had no application;

(4) Consideration for the defendant's promise made by the vote of the board of water commissioners could be found in the assumption of the position by the plaintiff and his implied promise to perform the work;

(5) The subsequent directions given by vote of the defendant at its special meeting could not impair the validity of the contract already made with the plaintiff by the board of water commissioners.

(6) The verdict was warranted and the exceptions were overruled.

CONTRACT, with a declaration in two counts, the first upon an express agreement by the plaintiff "to render his services to the defendant, as bookkeeper, collector and clerk, from said date for the term of one year, namely, March 23, 1929," in consideration of which "the defendant agreed to employ the plaintiff as bookkeeper, collector and clerk as aforesaid and pay him at the rate of $1,000 per year"; and the second count upon an account annexed for a balance of $980.77 alleged to be due "for services as bookkeeper, collector and clerk, March 23, 1928 to March 23, 1929." Writ dated May 16, 1929.

In the Superior Court, the action was tried before *Weed*, J.

By St. 1924, c. 408, the defendant was authorized to take over the Onset Water Company either by eminent domain or by purchase and thereafter to maintain a general water supply system. Material portions of §§ 7 and 8 of that statute were as follows:

"Section 7. The said district shall, after the purchase of the franchise, corporate property, rights and privileges of said water company [Onset Water Company] as provided in this act, at a legal meeting called for the purpose, elect by ballot three persons to hold office . . . to constitute a board of water commissioners; . . . . All authority granted to the said district by this act, except sections five and six [which referred only to authority to borrow money and provide for payment of loans], when not specifically provided otherwise, shall be vested in the said board of water commissioners, who shall be subject, however, to such instructions, rules and regulations as said district may impose by vote. . . .

"Section 8. The said commissioners shall fix just and equitable rates and prices for the use of water, and shall prescribe the time and manner of payment. The income of the water works shall be used to defray all operating expenses, interest charges and payments on principal as they become due upon any bonds or notes issued under authority of this act. If there should be a net surplus remaining after providing for the aforesaid charges it shall be used for such new construction as said commissioners may determine upon, and in case a surplus should remain after payment for such new construction the water rates shall be reduced proportionately. No money shall be expended in new construction by said commissioners except from the net surplus aforesaid, unless the district appropriates and provides money therefor. All authority vested in the said commissioners by the foregoing provisions . . . shall be subject to the provisions of section seven. Said commissioners shall, annually and as often as the district may require, render to the district a report upon the condition of the works under their charge and an account of their doings, including an account of receipts and expenditures."

Material portions of the by-laws of the defendant were as follows:

Art. III, § 3, provided that no money should be paid from the treasury without the approval of the water com-

missioners in the case of bills belonging to the waterworks department.

Art. V, § 1, was as follows: "The Board of Water Commissioners shall have the care, custody, management and control of all property, real and personal, belonging to the District, except the property placed under the control of the Board of Engineers as provided in Article IV, section 2, of these By-Laws [which applied only to fire apparatus and furniture]; shall have authority to determine and establish from time to time a tariff of water rate, and make rules and regulations for the introduction and use of water."

Art. VII, § 1, was as follows: "The Treasurer shall be required to give bond in such sum as the District may require, with sureties to the satisfaction of the Water Commissioners, for the faithful performance of his official duties. He shall receive all sums of money belonging to the District, and pay over and account for the same according to its order, or to the order of the Water Commissioners as provided by" art. III, § 3.

The article in the warrant, upon which the vote, described in the opinion, was taken at the meeting of the defendant in 1926, was "To see if the District will pay the Clerk, Treasurer, Auditors, Prudential Committee and Water Commissioners for services for the ensuing year, appropriate money for the same, or act anything thereon."

Other material facts in evidence are described in the opinion. The defendant moved that a verdict be ordered in its favor, and, that motion being denied, asked for the following rulings:

"2. The water commissioners had no authority to engage the plaintiff.

"3. The water commissioners had no authority to bind the district by a contract for personal services beyond such time that the town might make rules or regulations in reference thereto."

"5. The district having voted on April 5, 1928, that the treasurer collect all money and keep all books of accounts of the fire department and water department of the Onset Fire District and that no money should be expended for the

keeping of books or the collection of money other than the salary of treasurer unless especially authorized by a meeting of the district duly called, the alleged contract of the water commissioners with the plaintiff could not bind the district beyond April 5, 1928."

"7. If" it be found that "the water commissioners requested the plaintiff to open the safe and turn over to them their books and the plaintiff refused so to do and in consequence thereof they discharged the plaintiff on May 18, 1928, then the plaintiff cannot recover any compensation beyond May 18, 1928."

There was a verdict for the plaintiff in the sum of $1,123.31, recorded subject to leave reserved under G. L. (Ter. Ed.) c. 231, § 120. A motion by the defendant that a verdict be entered in its favor was denied.

The defendant alleged exceptions.

*O. V. Fortier*, (*S. B. McLeod* with him,) for the defendant.
*W. J. Callahan*, for the plaintiff.

LUMMUS, J.   The defendant is a municipal *quasi* corporation organized under G. L. (Ter. Ed.) c. 48, §§ 60–80, for certain limited purposes. *Weymouth & Braintree Fire District* v. *County Commissioners*, 108 Mass. 142. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450, 451. *President & Trustees of Williams College* v. *Williamstown*, 219 Mass. 46. *Peck's Case*, 250 Mass. 261, 266. See also *Donohue* v. *Newburyport*, 211 Mass. 561, 568; *O'Donnell* v. *North Attleborough*, 212 Mass. 243. The powers of fire districts under general laws are limited to the means of extinguishing fires, and their financial affairs are in the hands of a treasurer, subject to the direction of the district itself or of its prudential committee. Each district has a clerk. By St. 1924, c. 408, which was duly accepted by vote, the powers of this particular fire district were extended to include the establishment and maintenance of a water supply system "for the purpose of supplying its inhabitants with water for the extinguishment of fires and for domestic and other purposes." All authority under that act, with certain immaterial exceptions, is vested in a "board of water commissioners," consisting of three persons, one to be elected each

year to serve for three years; but the board is "subject, however, to such instructions, rules and regulations as said district may impose by vote." The defendant apparently has kept separate its general powers and its peculiar powers under that act by choosing both a prudential committee and a board of water commissioners.

At the annual meeting of the defendant on March 15, 1926, the plaintiff was elected treasurer and clerk of the defendant. It was voted that the treasurer and clerk have charge of all the books and do the bookkeeping for both the department of the prudential committee and the water department, and that the salary of the "Clerk, Treasurer and Bookkeeper for the District be fifteen hundred ($1500.00) dollars per year," two thirds of which was to be paid by the water department and one third by the department of the prudential committee. The next day the board of water commissioners elected the plaintiff "Clerk of the Board." He proceeded to act as clerk, bookkeeper and collector for the water department, and clerk, bookkeeper and treasurer for the defendant generally.

At the annual meeting on March 22, 1927, the plaintiff was reëlected treasurer and clerk of the defendant, without any new specification of his duties. Although it was voted that the salaries of the clerk, treasurer and other officers be the same as in the preceding year, the sum of $1,540 was appropriated "for the salary of the Clerk, Treasurer and bookkeeper of the Onset Fire District, one thousand dollars to be paid from the earnings of the Water Department and five hundred and forty dollars to be raised by taxation." On March 25, 1927, the board of water commissioners again elected the plaintiff "Clerk of the Board." He continued to perform the same duties as in the preceding year.

At the annual meeting on March 19 and 20, 1928, Flora B. Robbins defeated the plaintiff for election as treasurer and clerk of the defendant. The duties were not specifically defined, any more than in the preceding year. The salary of the "Clerk and Treasurer" was fixed at $500. Thereafter, on March 23, 1928, the board of water commission-

ers voted that the plaintiff be appointed "Clerk, Collector and Bookkeeper of the Board of Water Commissioners" for the ensuing year at a salary of $1,000. On April 5, 1928, at a special meeting, the defendant voted that the treasurer be authorized "to collect all money and keep all books of accounts of both the Fire Department and the Water Department of the Onset Fire District, and that no money shall be expended for the keeping of books or collection of money, other than the salary of the Treasurer, unless especially authorized by a meeting of the District duly called." At the same meeting the salary of the treasurer was raised to $750. In obedience to this vote, the board of water commissioners, in conjunction with the treasurer, demanded that the plaintiff turn over his books to the treasurer, and upon his refusal to do so, forbade him to enter the premises.

The plaintiff brought this action on May 16, 1929, after the year had expired for which he contends that he was employed. His first count claimed damages for breach of contract, and his second count claimed his full salary according to the vote of the board of water commissioners on March 23, 1928. The jury on November 5, 1931, returned a verdict for the plaintiff for $1,123.31.

The vote at the annual meeting in 1926, requiring the treasurer and clerk to keep all the books of both departments, cannot be held to carry over into succeeding years (see *Packard* v. *First Congregational Parish in Duxbury*, 256 Mass. 550), and to define the duties of the offices to which Flora B. Robbins was elected in 1928, because that vote was adopted under an article in the warrant which dealt only with the payment of officers for services "for the ensuing year." When the treasurer and clerk was chosen in 1927 and 1928 no definition of his or her duties was voted. Therefore, on March 23, 1928, there was nothing to prevent the board of water commissioners, under its power (St. 1924, c. 408, § 7), to exercise generally the authority of the district under the act of 1924, from employing the plaintiff as "Clerk, Collector and Bookkeeper" in its department "for the year following." The plaintiff,

under the vote of that board on March 23, 1928, acquired no public office, but a mere employment. The rule that an appointment to a salaried public office creates no contract on either side for any definite term (*Donaghy* v. *Macy*, 167 Mass. 178, *Ransom* v. *Boston*, 192 Mass. 299, 305, *Mayor of Cambridge* v. *Cambridge*, 228 Mass. 249, *Hooker* v. *McLennan*, 236 Mass. 117, 120, *Reynolds* v. *McDermott*, 264 Mass. 158), has no application. Consideration for the defendant's promise made by the vote of the board could be found in the assumption of the position by the plaintiff and his implied promise to perform the work. Williston, Contracts, § 90. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. *Larson* v. *Jeffrey-Nichols Motor Co.* 279 Mass. 362. Even if the implied promise of the plaintiff to serve for the year would not be enforceable under the statute of frauds (see *Raymond* v. *Phipps*, 215 Mass. 559; *Larson* v. *Jeffrey-Nichols Motor Co.* 279 Mass. 362; Williston, Contracts, § 502), that would not affect its sufficiency as a consideration for the defendant's promise to employ him. Williston, Contracts, §§ 103, 105. The subsequent directions given by vote of the defendant at the special meeting on April 5, 1928, could not impair the validity of the contract already made with the plaintiff. See *Hall* v. *Holden*, 116 Mass. 172. The defendant's requests numbered 2, 3 and 5 were inconsistent with these principles and were properly refused. The defendant's request numbered 11 was untrue in fact, and was properly refused. The defendant's exceptions to the denial of its motion for a directed verdict and to the refusal to enter a verdict for the defendant by leave reserved (G. L. [Ter. Ed.] c. 231, § 120), must likewise be overruled.

*Exceptions overruled.*