Dohoney, J.
This is an action which stems from the drilling of certain wells by the defendant on land owned by the plaintiff. The plaintiff alleged that the wells were dug in a negligent fashion and did not operate in an acceptable manner. The defendant denied the wells were dug in a negligent manner. Various Third Party and Fourth Party Complaints were filed and answered. However, these were dismissed prior to trial and form no part of this decision. The defendant filed “Defendant’s Request for Findings of Fact and Conclusions of Law”. The Trial Justice found for the plaintiff in the amount of $12,127.02. The defendant claimed a report alleging to be aggrieved by certain evidentiary rulings, by what he claims was the non-action of the Trial Jusice on “Defendant’s Request for Findings of Fact arid Conclusions of Law”, and by the computation of damages by the Trial Justice.
The Trial Justice made findings of fact which indicated the Trial Justice found that the defendant did not dig the wells deep enough and did not properly seal the wells in the bedrock and that four of the six wells dug by the defendant were unsatisfactory. The Trial Justice did not purport to act specifically on the Defendant’s Request for Findings of Fact and Conclusion of Law which were designated “Findings of Fact”. As to those parts designated “Conclusion of Law”, the Trial Justice felt some were actually requests for Findings of Fact and took no action. As to the others, the Trial Justice acted thereon.
The report contains evidence of tending to show that the plaintiff was the owner of certain residential building lots in Mendon, Massachusetts, and that plaintiff and defendant entered into an oral contract whereby defendant would drill wells on Lots 2,3,4 and 8. The defendant did drill wells in October of 1977 on those lots and billed the plaintiff in the amount of $4,214.35. The evidence further shows that the plaintiff thereafter expended $1,350.00 for pumps for the wells on Lots 3 and 4. Further evidence shows that in the spring of 1978 there were complaints of sediment in the well on Lot 2. The defendant was made aware of this problem and installed a Jaswell seal, so-called, as a *232 remedy. This remedy proved unsatisfactory and the well was redug by the defendant without charge. In March of 1979, there were complaints about another well on Lot 3. The defendant was advised of this problem but did not respond. The plaintiff retained another contractor, L.E. Whipple Pump Co. to remedy this difficulty and to investigate the other wells on Lots 4 and 8. Ultimately, the plaintiff paid the second contractor the sum of $7,912.77 for redrilling of two wells on Lots 3 and 4 and placing a Jaswell seal in a Lot 8 well. The report also shows evidence that plaintiff did not advise the defendant as to any difficulties with Lots 4 and 8 prior to contracting with the Whipple Company. There was expert testimony presented by the plaintiff to the effect that the wells were not originally dug deep enough into the bedrock to form a proper seal. There was also expert testimony produced by the defendant to the effect that his method of drilling was proper.
I. The evidentiary rulings complained of relate to the invoices of the Whipple Company. If the matter were purely evidentiary, nothing would be before us because of the failure to comply with Rule 64(a) of the District/ Municipal Court Rules of Procedure as to the written request for report. However, the substance of the grievance is not their admission into evidence but the fact that the invoices contain amounts for pumps. The invoices are confusing as to what amount relates to the pumps. In any event, the position of the defendant is that since he did not originally contract to supply pumps, he should not be responsible for any damages for new pumps. However, the Trial Justice specifically felt the total amount of damages, including the pumps, was necessary “in order to obtain the relevant satisfactory wells”. This is a finding of damage which cannot be disturbed unless it is plainly wrong. T.L. Edwards, Inc. v. Fields, 57 Mass. App. Dec. 22 (1975) affirmed 371 Mass. 891, 895 (1976). Damages are not limited to the original portion of plaintiffs work, but may include anything reasonably flowing from his negligence.
II. As to the Defendant’s Request for Findings of Fact and Conclusion of Law, our analysis of the Request for Findings of Fact and Conclusions of Law leads us to the same conclusión of the Trial Justice with respect to those matters which were termed Conclusions of Law but which were really Requests for Findings of Fact. A Request for Finding of Fact neednotbe dealt with by a trial justice. See Stella v. Curtis, 348 Mass. 458 (1965), in which the Supreme Judicial Court stated:
. . . Under our practice it is clear that in an action at law ajudge is not required to pass upon requests for findings of fact, and that his denial of them or failure to pass upon them presents no question of law. Larson v. Jeffrey-Nichols Motor Co., 279 Mass. 362, 368; Wrobel v. General Acc. Fire & Life Assur. Corp. Ltd., 288 Mass. 206, 209; Conley v. Morash, 307 Mass. 430, 432; Perry v. Hanover, 314 Mass.
167, 170; and cases cited. . . .
As to the Request for Findings of Fact and Conclusions of Law which do present questions of law, we agree with the action of the Trial Justice. Nos. X, XI, XII and XIV (apparently identified as XII in the Memorandum of Decision) simply state that certain actions did not stem from the negligence of the defendant. The Trial Justice found otherwise and there is ample evidence in the report to support his findings. No. XIII relates to whether the defendant had an opportunity to inspect and or cure in compliance with Article Two of the Uniform Commercial Code. However, Article Two specifically relates to “transactions or goods”. General Laws, Chapter 106, §2-102. “Goods” njeans all things that are movable at the time of identification. *233 General Laws, Chapter 106, §2-105. Thus, the drilling of a well is not a transaction governed by Article Two of the Uniform Commercial Code.
III. As to the computation of damage, the Trial Justice specifically found that the paintiff paid the defendant the sum of $4,214.25 and paid the second contractor the sum of $7,912.77. The total of these is $12,127.02 and the Trial Justice entered judgment for this amount. The rule for computation of damages in a construction contract case where the work was negligently performed is set forth in Concanon v. Galanti, 348 Mass. 71, 74 (1964), as follows:
. . . The Concannons were entitled to damages sufficient to put them in as good a position as if there had been no breach and the contract had been completed. See Walsh v. Cornwell, 272 Mass. 555, 563-564; WILLISTON, CONTRACTS (2d ed.) §1363; McCORMICK, DAMAGES, §168. See also F. A. Bartlett Tree Expert Co. v. Hartney, 308 Mass. 407, 411-412; RESTATEMENT: CONTRACTS, §346; CORBIN, CONTRACTS, § 1089; annotation, 76 A.L.R. 2d 805, 810-815. Professor Williston states the rule (at pp. 3825-3826), “Where the contractor fails to keep his agreement, the measure of the employer’s damages ... is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance . .
Therefore, it appears that the amount recoverable is the cost to repair of $7,912.77. Moreover, to permit the plaintiff to recover the sums paid to the defendant and to other contractor would mean the plaintiff would receive the wells at no cost. This would be an unjust result.
It is hereby ordered that the judgment be vacated and that a new judgment enter for the plaintiff against the defendant in the amount of $7,912.77 plus interest and costs.